*827 Opinion
RAMIREZ, P. J.
A developer appeals from a summary judgment entered against it in its action for damages against a law firm. We affirm.
Facts
In April 1989 plaintiff B.L.M., a general partnership, filed an action denominated a “Complaint for Legal Malpractice” against defendants Sabo & Deitsch, a professional corporation, and three individuals, Timothy Sabo, Stephen P. Deitsch, and Christine Youngs. The complaint alleged that in early 1987, B.L.M. had approached the city council, the redevelopment agency and the city staff of the City of Rialto (hereafter sometimes referred to collectively as Rialto) regarding a proposal to construct an apartment project for seniors, “seeking financial assistance in said construction through public financing.” As originally proposed, Rialto would have issued public financing and constructed the project. Under that proposal, construction of the project would have required public bidding as well as payment of prevailing wage. A draft agreement was prepared by Finer, Kim & Steams, the law firm representing B.L.M., calling for the payment of prevailing wage.
The complaint went on to allege that prior to formal consideration of the proposal by Rialto it was determined by the parties that public bidding and payment of prevailing wage made the project economically infeasible; in addition, Rialto wished the developer to take a greater portion of the risk.
As a result of these considerations B.L.M. proposed a project that would be constructed by B.L.M. and acquired subsequently by Rialto through the issuance of certificates of participation.
In July 1987 the Rialto City Council adopted a resolution in which it accepted the financial proposal, approved the preparation of the agreement, appointed a financial adviser to Rialto, and appointed Sabo & Deitsch as special counsel and bond counsel for the project. The complaint alleges that Sabo & Deitsch specifically stated at that time in conversations with B.L.M. that public bidding and payment of prevailing wage were not required on a project financed in this manner because B.L.M. was to undertake the construction. The complaint states that “As a result of the elimination of the requirement for payment of prevailing wage, the project became economically feasible” and that B.L.M., as well as Rialto, relied on that assurance in proceeding to expend funds to plan and develop the project.
Paragraph 15 of the complaint alleges that “[Sabo & Deitsch], and each of them, hold a duty to [B.L.M.] to use such skill, prudence, and diligence as *828 other members of their profession commonly possess and exercise. As a part of the services, [B.L.M.] agreed to perform on behalf of the City of Rialto/ Redevelopment Agency, [Sabo & Deitsch] agreed to perform Special Counsel and Bond Counsel services to the benefit of [B.L.M.] as a third party beneficiary to [B.L.M.’s] contract with the City of Rialto/Redevelopment Agency and as such third party beneficiary, [B.L.M.] was entitled to rely upon the documents prepared and opinions expressed in connection with the project.” [5'zc.]
In August 1987 Rialto approved certain management agreements and the development agreement in connection with the financing of the project. On September 1, 1987, a memorandum of understanding (MOU) between B.L.M. and Rialto concerning the financing and development of the project was entered into; the MOU had been “prepared and/or reviewed” by Sabo & Deitsch. The MOU provided that B.L.M. was to obtain conventional interim financing for the project and was to construct the project within 24 months; simultaneously with the closing of the interim financing, Rialto was to cause the sale and delivery of certain certificates of participation, the proceeds of which were to be held in escrow until the construction of the project was complete and a specified occupancy level was reached. At that point, the proceeds were to be used to purchase the completed project from the developer.
On November 3, 1987, a revised MOU was entered into which included a detailed financial analysis of the project. A second revised MOU was adopted by Rialto in February 1988. That MOU contemplated the issuance of certificates of participation by Rialto in the amount of $22.5 million; B.L.M. was entitled to a development fee not to exceed $3.5 million.
On April 28, 1988, Youngs did not attend the closing meeting but instead, by telephone, indicated that Sabo & Deitsch would not let her provide a final opinion of bond counsel because their review had established that payment of prevailing wage was necessary as a condition of validly issuing the certificates of participation.
As a result of the refusal of Sabo & Deitsch to issue the opinion of bond counsel the project could not go forward. B.L.M. alleged in the complaint that it was damaged in the amount of $415,000, the amount it had expended on the project already, and was further damaged in the amount of $3.5 million, representing the lost developer’s fee. B.L.M. alleged a failure on the part of Sabo & Deitsch to exercise “reasonable care, skill and diligence in undertaking to perform legal services related to the providing of Special Counsel and Bond Counsel services for the project.” B.L.M. further alleged *829 a duty owed by Sabo & Deitsch to B.L.M. to properly supervise the legal work performed, and breach of that duty. The complaint went on to state that had Sabo & Deitsch “utilized the skill, prudence and diligence as other members of their profession commonly possessed and exercised, [Sabo & Deitsch] would at no time have provided the opinion that prevailing wage was not required and [B.L.M.] therefore would not have relied thereon to their detriment." B.L.M. then asked for damages in the amount of the money expended as well as the lost developer’s fee.[1]
In October 1992 an arbitrator awarded $3.5 million to B.L.M. Sabo & Deitsch requested a trial de novo. Following grant of that request Sabo & Deitsch filed their motion for summary judgment, based on the argument that B.L.M. “cannot establish the required duty element in this legal malpractice action, because an attorney-client relationship never existed between plaintiff and defendants.”
In its ruling on the motion the trial court found that the complaint contained “a single cause of action for professional negligence." The court concluded that Sabo & Deitsch owed no duty to B.L.M. and granted the motion for summary judgment. Judgment was entered in favor of Sabo & Deitsch, and B.L.M. filed this appeal.[2]
Discussion
I. Standard of Review
“In reviewing a ruling on a motion for summary judgment, an appellate court (1) ‘identifies] the issues framed by the pleadings,’ (2) ‘determine[s] whether the moving party’s showing has established facts which negate the opponent’s claim and justify a judgment in movant’s favor,’ and (3) ‘[w]hen a summary judgment motion prima facie justifies a judgment, . . . determine^] whether the opposition demonstrates the existence of a triable, material factual issue.’ (AARTS Productions, Inc. v. Crocker National Bank (1986) 179 Cal.App.3d 1061, 1064-1065. . . .)” (Turner v. Anheuser-Busch, Inc. (1994) 7 Cal.4th 1238, 1252-1253 [32 Cal.Rptr.2d 223, 876 P.2d 1022].)
*830 II. Cause of Action for Legal Malpractice
Our first task in reviewing a motion for summary judgment is to identify the issues framed by the pleadings. In the present case the complaint itself was called a “Complaint for Legal Malpractice.” Legal malpractice is, of course, a form of negligence. (Laird v. Blacker (1992) 2 Cal.4th 606, 625 [7 Cal.Rptr.2d 550, 828 P.2d 691].)
“The elements of a cause of action in tort for professional negligence are: (1) the duty of the professional to use such skill, prudence, and diligence as other members of [the] profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional’s negligence. [Citations.]” (Budd v. Nixen (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433].)
In its complaint B.L.M. alleged that Sabo & Deitsch owed a duty to B.L.M. “to use such skill, prudence, and diligence as other members of their profession commonly possess and exercise” in performing legal services related to the project, and further alleged that Sabo & Deitsch owed a duty to B.L.M. to properly supervise the legal work performed. The complaint alleged that Sabo & Deitsch failed to exercise due care in the performance of its duty by providing the opinion that prevailing wage would not be required on the project; that B.L.M. reasonably relied to its detriment on that opinion; and that B.L.M. suffered substantial damage as a result of its reliance. Thus, on its face the complaint alleged the elements of a cause of action for legal malpractice.
A. No Liability for Negligence to Nonclient
Between the filing of the complaint and the filing of the motion for summary judgment the California Supreme Court issued its opinion in Bily v. Arthur Young & Co. (1992) 3 Cal.4th 370 [11 Cal.Rptr.2d 51, 834 P.2d 745, 48 A.L.R.5th 835 ] (hereafter Bily), an opinion that addressed the extent to which liability for professional malpractice extends to those who are not clients of the professional. Specifically, that court considered “whether and to what extent an accountant’s duty of care in the preparation of an independent audit of a client’s financial statements extends to persons other than the client.” (Id., at p. 375.)[3]
The court in Bily first discussed the various approaches that have been adopted in different jurisdictions and under federal securities law toward the *831 problem of auditor liability to third persons. (Bily, supra, 3 Cal.4th at pp. 384-396.) The court then analyzed the traditional elements that have led to imposition of liability for negligence, particularly the factors considered in assessing legal duty and the other factors relevant to the imposition of auditor liability, and concluded that “. . . an auditor’s liability for general negligence in the conduct of an audit of its client financial statements is confined to the client, i.e., the person who contracts for or engages the audit services. Other persons may not recover on a pure negligence theory.” (Id., at p. 406, fn. omitted.) B.L.M. has acknowledged in its brief on appeal the holding in Bily that third parties could not recover from an auditor under a general negligence theory.
The trial court in the present case relied on the analysis and the conclusion in Bily to find no duty owed by Sabo & Deitsch to B.L.M. and therefore no liability for negligence.
B. No Liability for Negligence Under Third Party Beneficiary Theory
The court in Bily noted in a footnote that “In theory, there is an additional class of persons who may be the practical and legal equivalent of ‘clients.’ It is possible the audit engagement contract might expressly identify a particular third party or parties so as to make them express third party beneficiaries of the contract.” (Bily, supra, 3 Cal.4th at p. 406, fn. 16.) The court was not required to decide the issue in Bily because “No third party is identified in the engagement contract.” (Ibid.)
On appeal B.L.M. cites the resolution adopted by Rialto on July 7, 1987, which specifically identifies Lawrence Lipps (general partner of B.L.M.) as the developer of the project, as sufficiently identifying B.L.M. so as to make it an express third party beneficiary of the contract between Rialto and Sabo & Deitsch. The July 7, 1987, resolution includes a provision stating, “The City Staff, with the law firm of Sabo & Deitsch, a Professional Corporation, as Special Counsel to the City [of Rialto] and General Counsel to the [Redevelopment] Agency [of the City of Rialto], is hereby authorized and directed to initiate preparation of the documentation for the Projects . . . .” The resolution contains other similar provisions, making it clear that the firm of Sabo & Deitsch was working with the city staff and on behalf of Rialto in working on the project.
B.L.M. argues, however, that the provision in the resolution stating, “The City Council hereby appoints the law firm of Sabo & Deitsch, a Professional *832 Corporation, as Bond Counsel for the Projects,” is sufficient to create some sort of professional relationship between B.L.M. and Sabo & Deitsch because a bond counsel is counsel to the transaction and not to any particular party. Thus, according to B.L.M., “The City was not arm’s-length from the developer; the parties were working together to provide needed public housing .... [Sabo’s] opinions as to validity were to protect all parties to the transactions.”
Under BJL.M.’s argument Sabo & Deitsch would end up in a completely untenable position: Having been hired by Rialto to work with and advise Rialto and its staff, Sabo & Deitsch would be subject to potential liability should that advice include something detrimental to B.L.M. According to this theory, it would appear that any time the parties to a contract are named in the contract, and a law firm is named in the contract as representing one of the parties, the law firm would owe a professional duty of care to all the other parties named in the contract as well. We reject this approach as being unworkable and undermining the very nature of the attorney-client relationship.
The mere fact that B.L.M. stood to benefit from the successful completion of the project does not render B.L.M. a third party beneficiary of the employment agreement between Rialto and Sabo & Deitsch. In order to show a duty was owed to a third party beneficiary of a legal services agreement the third party must show that “that was the intention of the purchaser of the legal services—the party in privity,” and that “imposition of the duty carries out the prime purpose of the contract for services.” {Johnson v. Superior Court (1995) 38 Cal.App.4th 463, 472 [45 Cal.Rptr.2d 312].)[4]
 No such showing was made here.
Other cases have applied a similar rule. In Donald v. Garry (1971) 19 Cal.App.3d 769 [97 Cal.Rptr. 191, 45 A.L.R.3d 1177], the court reversed an order sustaining the demurrer of an attorney who had been hired by a collection company to collect a debt owed to a creditor. The collection action had been dismissed because of the attorney’s lack of diligent prosecution, and the creditor filed suit against the attorney. The appellate court found a duty was owed by the attorney to the creditor, even though the attorney’s client was the collection company and not the creditor, noting, “the transaction in which [the attorney’s] negligence occurred was intended *833 primarily for the benefit of [the creditor]. [The attorney] was retained to collect an account due him.” (Id., at p. 772.)
In Home Budget Loans, Inc. v. Jacoby & Meyers Law Offices (1989) 207 Cal.App.3d 1277 [255 Cal.Rptr. 483], the trial court sustained the demurrer of defendant law firm in an action brought against it by Home Budget Loans, Inc. (HBL), a mortgage broker. “As a condition of arranging a loan for one Ada Austin, HBL required that she consult with an attorney, have the attorney review the loan documentation and provide a written verification to HBL that the attorney had explained the terms of the loan transaction to Austin and that she understood those terms and wished to proceed with the loan.” (Id., at p. 1281.) Austin retained a lawyer from defendant law firm. The lawyer reviewed the proposed loan transaction with Austin then wrote a letter to HBL representing that Austin understood the terms of the transaction and wished to proceed. These representations were false. In reliance on these representations HBL disbursed the proceeds of the loan, and was subsequently sued by Austin. HBL filed a cross-complaint against defendant law firm. (Id., at p. 1282.) The appellate court reversed the order sustaining the demurrer of the law firm to HBL’s cross-complaint, allowing the action to proceed and noting that “ ‘In simple terms, defendants are alleged to have prepared a false and/or misleading document, the purpose of which was to influence plaintiffs’ conduct. . . .’ [Citation.]” (Id., at p. 1284.)[5]
We conclude that the reference to B.L.M. as a participant in the project in the resolution passed by Rialto approving the project in concept and appointing Sabo & Deitsch to work with the city’s staff and appointing Sabo & Deitsch as bond counsel for the project was not sufficient to render B.L.M. a third party beneficiary of the employment agreement between Rialto and Sabo & Deitsch. Thus, B.L.M. failed to allege facts that would have created a contractual obligation on the part of Sabo & Deitsch toward B.L.M. under a third party beneficiary theory.
We hold that the trial court correctly concluded that Sabo & Deitsch owed no duty of professional care to B.L.M., and thus could not be held liable to B.L.M. for legal malpractice.
*834 III. Complaint Failed to State a Cause of Action for Negligent Misrepresentation
The complaint in the present case states only one cause of action, entitled legal malpractice. However, on appeal B.L.M. argues that it should be permitted to proceed against Sabo & Deitsch under a negligent misrepresentation theory. B.L.M. argues that it sufficiently alleged the elements of that tort in the complaint, and appears to ignore the fact that at no time did either the defendant or the trial court have notice that there was an additional theory of recovery. However, resolving every reasonable doubt in favor of the complaint, as we must in review of grant of a motion for summary judgment (Truestone, Inc. v. Simi West Industrial Park II (1984) 163 Cal.App.3d 715, 721 [209 Cal.Rptr. 757]), we will review B.L.M.’s contention in this appeal. In our review we are guided by the discussion of the tort of negligent misrepresentation contained in Bily, supra, 3 Cal.4th. at page 407 et seq. The court there stated that “Negligent misrepresentation is a separate and distinct tort, a species of the tort of deceit.” (Id., at p. 407.)
“To be actionable deceit, the representation need not be made with knowledge of actual falsity, but need only be an ‘assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true’ [citations] and made ‘with intent to induce [the recipient] to alter his position to his injury or his risk. . . .’ [Citations.]” (Gagne v. Bertran (1954) 43 Cal.2d 481, 487-488 [275 P.2d 15].) The elements of negligent misrepresentation also include justifiable reliance on the representation, and resulting damage. (Home Budget Loans, Inc. v. Jacoby & Meyers Law Offices, supra, 207 Cal.App.3d 1277, 1285; see also Fox v. Pollack (1986) 181 Cal.App.3d 954, 962 [226 Cal.Rptr. 532] [“Negligent misrepresentation is a form of deceit, the elements of which consist of (1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another’s reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages.”].)
In our review of a summary judgment motion this court, like the trial court, must begin its inquiry with a review of the complaint to identify the issues framed by the pleadings. The complaint in the present action alleges that Sabo & Deitsch misrepresented the need for the project to require payment of prevailing wage. “Under certain circumstances, expressions of professional opinion are treated as representations of fact. When a statement, although in the form of an opinion, is ‘not a casual expression of belief’ but ‘a deliberate affirmation of the matters stated,’ it may be regarded as a positive assertion of fact. [Citation.]” (Bily, supra, 3 *835 Cal.4th at p. 408.) Next, by stating that if Sabo & Deitsch had “utilized the skill, prudence and diligence” commonly possessed and exercised by members of their profession they would not have provided the opinion that prevailing wage was not required, the complaint implies that Sabo & Deitsch lacked reasonable grounds for believing the representations to be true.[6] B.L.M. alleges in the complaint that it relied on the representation of Sabo & Deitsch, and that it suffered damages as a result. It would appear that the pleadings as to those elements of negligent misrepresentation would be sufficient to give notice to defendants of the actions for which they were to be held liable.
We conclude, however, that B.L.M. failed to sufficiently allege in the complaint that Sabo & Deitsch had the intent to induce B.L.M.’s reliance on its representations, or that the reliance of B.L.M. was justifiable under the circumstances of the case.
A. Intent to Influence
In Bily the Supreme Court noted that in order to recognize a cause of action on behalf of a third party for negligent misrepresentation by a professional, “California courts have consistently required some manifestation on the part of a professional who offers an opinion, information, or advice that he or she is acting to benefit a third party or defined group of third parties in a specific and circumscribed transaction.” (Bily, supra, 3 Cal.4th at pp. 411-412.) “‘Intent to influence is a threshold issue. In its absence there is no liability even though a plaintiff has relied on the misrepresentation to his or her detriment, and even if such reliance were reasonably foreseeable.’ (Stagen v. Stewart-West Coast Title Co. (1983) 149 Cal.App.3d 114, 121-122 . . . , italics added.)” (3 Cal.4th at p. 412, fn. omitted.)
Discussing section 552 of the Restatement Second of Torts, page 261, the Bily court paraphrased the requirement of that section as follows: “[A] supplier of information is liable for negligence to a third party only if he or she intends to supply the information for the benefit of one or more third parties in a specific transaction or type of transaction identified to the supplier.” (Bily, supra, 3 Cal.4th at p. 392.) The court continued: “The ‘intent to benefit’ language of the Restatement Second of Torts thus creates an objective standard that looks to the specific circumstances (e.g., supplier-client engagement and the supplier’s communications with the third party) to *836 ascertain whether a supplier has undertaken to inform and guide a third party with respect to an identified transaction or type of transaction. If such a specific undertaking has been made, liability is imposed on the supplier.” (3 Cal.4th at p. 410, italics in original.)
The complaint here alleges that discussions were held between B.L.M. and Sabo & Deitsch “with regard to the requirement for public bidding and payment of prevailing wage. [Sabo & Deitsch] specifically stated that public bidding and payment of the prevailing wage was not required on a project financed in this manner, because [B.L.M.] was to undertake the construction.” There is no specific allegation in the complaint of intent on the part of Sabo & Deitsch to induce B.L.M. to act in reliance on the representation; the only indication of such intent would be the inference to be drawn that if Sabo & Deitsch said it they must have intended B.L.M. to rely on it. That is a thin reed on which to hang potentially enormous liability.
B. Justifiable Reliance
A more fundamental deficiency in the complaint is the failure to allege that B.L.M.’s reliance on the representations of Sabo & Deitsch was justified. In its discussion of negligent misrepresentation the court in Bily “emphasize[d] the indispensability of justifiable reliance” on the part of the plaintiff. (Bily, supra, 3 Cal.4th at p. 413.) Comparing jury instructions on general negligence, in which “The reliance element ... is only implicit,” the court noted that “an instruction based on the elements of negligent misrepresentation necessarily and properly focuses the jury’s attention on the truth or falsity of the audit report’s representations and plaintiff’s actual and justifiable reliance on them.” (Ibid.)
The complaint more than adequately alleges actual reliance by B.L.M. on the representations of Sabo & Deitsch regarding the need for payment of prevailing wage. However, B.L.M. has failed to allege facts sufficient to establish that the reliance was justifiable. The complaint states that the law firm representing B.L.M. had given B.L.M. an agreement outlining a proposal that specifically called for the payment of prevailing wage. This indicates that B.L.M. was represented by its own counsel, and that its counsel had at least at one point given a legal opinion directly contrary to the Sabo & Deitsch opinion on which B.L.M. subsequently relied. The complaint includes no other allegations to explain or justify B.L.M.’s reliance on the opinion of the law firm representing the parties with whom B.L.M. was in negotiations regarding development of the project. It is clear from the complaint that Sabo & Deitsch was hired by Rialto and was chosen by that city’s council to work with and advise Rialto. There are no allegations in the *837 complaint to support the claim now made by B.L.M. that B.L.M.’s reliance on the opinion by Sabo & Deitsch was justifiable, and that Sabo & Deitsch intended that should be so.
In Norton v. Hines (1975) 49 Cal.App.3d 917 [123 Cal.Rptr. 237], the trial court sustained, without leave to amend, a demurrer filed by Attorney Hines to a complaint for damages for professional negligence filed by plaintiff Norton. Norton had been sued by a client of Hines’s, allegedly as a result of Hines’s negligent advice that the suit had merit. (Id., at p. 919.) On appeal, Norton argued that “ ‘an attorney owe[s] a duty to a foreseen third person to exercise reasonable care in advising his client to commence a lawsuit against that third person . . . .’” (Ibid.) In approving the order sustaining Hines’s demurrer to the complaint the Norton court stated the rule that “ ‘An attorney may be liable for damage caused by his negligence to a person intended to be benefited by his performance irrespective of any lack of privity of contract between the attorney and the party to be benefited. [Citation.] The liability sounds in tort.’ (Italics added.)” (Id., at p. 921, fn. omitted.) However, the court went on to conclude that “In the case at bar a former litigant is suing adverse counsel. Clearly, an adverse party is not an intended beneficiary of the adverse counsel’s client.” (Ibid:, accord, Weaver v. Superior Court (1979) 95 Cal.App.3d 166, 180 [156 Cal.Rptr. 745].)
Other decisions have applied the same reasoning: See, e.g., Parnell v. Smart (1977) 66 Cal.App.3d 833, 837-838 [136 Cal.Rptr. 246] (affirming order sustaining defendants’ demurrer, and stating, “Defendants [attorneys] were directly responsible to their [insurance company] client. . . and were under a duty to represent and protect their client’s interest against the claim being made by plaintiff. In this role they were duty bound to challenge, minimize or, if possible, to defeat the claim being made. Under these circumstances, it is unreasonable to conceive that defendants owed some sort of legal duty to plaintiff.”); Omega Video Inc. v. Superior Court (1983) 146 Cal.App.3d 470, 480 [194 Cal.Rptr. 574] (“It is the present state of California law that an attorney may not be sued for negligent representation of a client by an adverse party in an action who claims to have suffered resulting injury from such negligence.’’).
An attorney for one of the parties in a real estate transaction does not have a duty of professional care to the escrow agent for the transaction. (St. Paul Title Co. v. Meier (1986) 181 Cal.App.3d 948, 952 [226 Cal.Rptr. 538].) An attorney does not owe a duty of professional care to “an unrepresented party to a real estate exchange in which the attorney represents the opposite party”; neither does the unrepresented party in such a situation have a cause of action against the attorney for negligent misrepresentation. (Fox v. Pollack, supra, 181 Cal.App.3d 954, 957, 963.)
*838 In a closely related issue, the loyalty owed by an attorney to a client has recently been discussed by the California Supreme Court in Flatt v. Superior Court (1994) 9 Cal.4th 275 [36 Cal.Rptr.2d 537, 885 P.2d 950]. In that case Flatt, an attorney, met with a prospective client to discuss a possible malpractice action against the client’s previous attorney. One week after the meeting, Flatt returned the client’s papers to him and stated she could not represent him because her firm was representing the previous attorney’s firm in an unrelated matter. (Id., at pp. 279-280.)
Twenty-two months later the prospective client filed suit against his previous attorney and also against Flatt and her firm claiming that Flatt had breached a duty to advise him of the statute of limitations on his proposed action and had failed to advise him to consult another attorney. (Flatt v. Superior Court, supra, 9 Cal.4th at p. 280.) The Supreme Court rejected this claim, holding that Flatt had an undivided duty of loyalty to the existing client and that she had no duty to give the prospective client advice that would have “aided in advancing his contemplated lawsuit against ... the firm’s existing client.” (Id., at p. 289.) In its discussion the Supreme Court quoted its own language from a 1930 decision stating “ ‘It is ... an attorney’s duty to protect his client in every possible way, and it is a violation of that duty for him to assume a position adverse or antagonistic to his client without the latter’s free and intelligent consent given after full knowledge of all the facts and circumstances. [Citation.] By virtue of this rule an attorney is precluded from assuming any relation which would prevent him from devoting his entire energies to his client’s interests.’ ” (Id., at p. 289, quoting Anderson v. Eaton (1930) 211 Cal.113, 116 [293 P. 788], italics omitted.)[7]
In light of the fact that an attorney is prohibited from representing one who holds a position adverse or antagonistic to an existing client, it would be anomalous to hold that a person in an adverse or antagonistic position could nonetheless rely on a legal opinion of the attorney as a basis for holding the attorney liable for negligent misrepresentation. This would in fact amount to creating a duty of professional care on the part of the attorney toward a person with whom the attorney would be prohibited from maintaining a professional relationship.
The dissent argues that B.L.M. and the city were not adverse parties but were instead cooperating in trying to build the project; “While they were *839 negotiating at arm’s length regarding some aspects of the deal, their interests concerning others coincided.” (Dis. opn., post, at p. 849.) Under our reading of Flatt v. Superior Court, supra, 9 Cal.4th 275, the appointment of Sabo & Deitsch as special counsel to Rialto and general counsel to the redevelopment agency would create a primary duty of loyalty on the part of the firm toward those clients. The fact that those entities were involved in arm’s-length negotiations with B.L.M. regarding development of the project would preclude representation of B.L.M. by Sabo & Deitsch, in the absence of a written waiver.
We conclude that it would be inappropriate to hold an attorney liable to a third party for a legal opinion which the third party could not, under the Rules of Professional Conduct, have contracted to obtain from that attorney. We therefore hold that the reliance by B.L.M. on the legal opinion of Sabo & Deitsch regarding payment of prevailing wage was not justifiable under the facts alleged, and that B.L.M. has failed to sufficiently allege facts to support its claim.
We do not suggest that an attorney should be exempt from liability for negligent misrepresentation under circumstances in which a nonattomey could be held liable; we merely decline to extend professional liability under a negligent misrepresentation theory to individuals who are not clients of the attorney.[8]
A review of cases suggests that courts already make this distinction and have limited recovery by a third party against an attorney under a negligent misrepresentation theory to those cases involving misrepresentations of fact rather than legal opinions. Thus, for example, in Cicone v. URS Corp. (1986) 183 Cal.App.3d 194 [227 Cal.Rptr. 887], an action for negligent misrepresentation was permitted to proceed against an attorney in a suit arising out of the sale of a company. A sales agreement prepared by the buyer included a provision stating that the sellers warranted the accuracy of an unaudited balance sheet that had been provided to buyer. At a meeting on the agreement, counsel for sellers told the buyer and his attorney, Canady, that the sellers would not guarantee the accuracy of the balance sheet; Canady, with the tacit approval of the buyer, replied that the buyer understood, and would deem the sellers to be guaranteeing the information only to the sellers’ best *840 knowledge. (Id.., at p. 199.) When the buyer subsequently made a claim against the sellers based on an inaccuracy in the balance sheet, the sellers filed a legal malpractice claim against their former attorney, who in turn filed a cross-complaint for indemnity against, among others, Canady. (Id., at p. 198.) The court, in permitting the negligent misrepresentation action to proceed, noted that “Cicone’s reliance on Canady’s alleged misrepresentation was the very purpose of the representation. Canady expected Cicone to advise his client to close the transaction; Cicone did so and the transaction was closed.” (Id., at p. 209.) It is apparent, however, that Canady’s representation was not a legal opinion but was instead a misrepresentation of his client’s intentions.
In Roberts v. Ball, Hunt, Hart, Brown & Baerwitz (1976) 57 Cal.App.3d 104 [128 Cal.Rptr. 901], plaintiff was allowed to proceed against a law firm under a negligent misrepresentation theory on a showing that the law firm, “at the request of [client] and with knowledge that [client] would show it to plaintiff, a prospective creditor of [partnership], gave to [client] a letter stating that, in the professional opinion of the firm, [partnership] was a duly organized general partnership, consisting of 14 individuals who were general partners.” (Id., at p. 107.) Plaintiff alleged that at the time the letter was prepared the firm knew “the alleged general partners had met and voted to dissolve” and also that a number of the partners were disputing their status as general partners. (Id., at p. 108.) Moreover, the firm “knew and understood that [firm’s] letter was to be shown to plaintiff in order to induce plaintiff to make loans to [partnership].” (Id., at p. 107.) Thus, while the existence or nonexistence of a partnership may be a legal opinion, the fact that a meeting was held and a vote was taken is not.
Decisions we have found involving reliance by a third party on a legal opinion provided by an attorney have not permitted recovery by the third party. (See, e.g., Goodman v. Kennedy (1976) 18 Cal.3d 335 [134 Cal.Rptr. 375, 556 P.2d 737] [third party not permitted to recover in suit against attorney on the basis of attorney’s erroneous advice to clients that shares of stock could be issued to clients and sold to third persons without jeopardizing the exemption from the requirement that the stock be registered].) The court in Goodman v. Kennedy noted that “To make an attorney liable for negligent confidential advice not only to the client who enters into a transaction in reliance upon the advice but also to the other parties to the transaction with whom the client deals at arm’s length would inject undesirable self-protective reservations into the attorney’s counseling role.” (Id., at p. 344.)
Applying these various threads to the allegations of the present case we find no decisions that, on the basis of the facts alleged in the complaint, *841 would support a finding that B.L.M. should be permitted to proceed with an action against Sabo & Deitsch under the theory of negligent misrepresentation.
Disposition
The judgment in favor of Sabo & Deitsch is affirmed.[9] Costs on appeal to be borne by appellant.
Hollenhorst, J., concurred.

B.L.M. did not allege in its complaint that the opinion offered by Sabo & Deitsch that prevailing wage was required for the project was erroneous. That being the case, it is not apparent on what grounds B.L.M. sought in its complaint to recover lost profits on the project since it was not alleging that the project could legally have gone forward.

This is actually B.L.M.’s second appeal. We dismissed its first appeal in 1994 because a cross-complaint was still pending between the parties that had not been resolved by the summary judgment motion. (B.L.M. v. Sabo & Deitsch (Nov. 8, 1994) E012862 [nonpub. opn.].) That cross-complaint has since been dismissed, and thus the summary judgment is now final and appealable.

Although the Bily decision itself involved only accountant liability, the court stated, “Accountants are not unique in their position as suppliers of information and evaluations for the use and benefit of others. Other professionals, including attorneys, architects, engineers, *831 title insurers and abstractors, and others also perform that function. And, like auditors, these professionals may also face suits by third persons claiming reliance on information and opinions generated in a professional capacity.” (Bily, supra, 3 Cal.4th at p. 410.) We assume, therefore, that the court intended its discussion of liability to third parties to be considered in a case such as the one now before us.

The court in Johnson v. Superior Court, supra, 38 Cal.App.4th 463, found no duty of professional care owed to limited partners under third party beneficiary theory by an attorney who provided services to the general partner of a partnership, although as attorney for the partnership he might have owed a duty to individual limited partners. (38 Cal.App.4th at pp. 472, 479.)

Compare the decision in Burger v. Pond (1990) 224 Cal.App.3d 597 [273 Cal.Rptr. 709], in which the second wife of plaintiff Kenneth Burger sought to recover from Burger’s attorney, Pond, following Pond’s negligent handling of Burger’s divorce from his first wife. This court concluded that “The transaction between Kenneth Burger and Pond was not intended to benefit or affect plaintiff. The main, and in our view sole, purpose of the Burger-Pond transaction was to dissolve Kenneth Burger’s existing marriage.” (Id., at p. 605.)

Implicit in the complaint’s characterization of Sabo & Deitsch’s lack of reasonable grounds for believing their representations to be true is the assumption that Sabo & Deitsch were to be held to a standard applicable to attorneys rather than to the general public in making a negligent misrepresentation. We conclude, however, that even if we apply a standard equally applicable to nonattomeys, B.L.M. has sufficiently alleged that Sabo & Deitsch lacked reasonable grounds for believing their representations to be true.

This same rule is set forth in rule 3-310(C)(1) of the California Rules of Professional Conduct, which states, in part: “A member shall not, without the informed written consent of each client:
“(1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict. . . .”

Extending liability for legal opinions under such a theory seems to us to undercut the holding of Bily, supra, 3 Cal.4th 370, that liability for legal malpractice extends only to clients and to those identified as third party beneficiaries of the professional employment agreement.
To hold that reliance by a nonclient on an attorney’s professional opinion, in combination with an inference that the attorney intended such reliance, is sufficient to hold the attorney liable for unknown errors in that opinion, seems to extend professional liability beyond what was approved in Bily,

In an odd twist, B.L.M. argues in this appeal that payment of prevailing wage may not have been required, and that Sabo & Deitsch should have proceeded to issue the opinion of bond counsel that would have allowed the project to proceed. That would undermine completely the basis for the current action, because B.L.M. would then be unable to show breach of any duty of care owed to it (assuming a duty was owed), and would be unable to show that there was a lack of reasonable belief on the part of Sabo & Deitsch that their opinion was correct. Our review is limited to the theories of recovery made, or arguably made, in the complaint and the moving papers below.