[No. B028622. Second Dist., Div. Seven. Feb. 14, 1989.]

HOME BUDGET LOANS, INC., Cross-complainant and Appellant,
v.
JACOBY & MEYERS LAW OFFICES, Cross-defendant and
Respondent.

## COUNSEL

Feinstein, Gourley & Burstein and N. Mitchell Feinstein for Cross-complainant and Appellant.

Sassoon Sales and Jerry Wayne Howard for Cross-defendant and Respondent.

## OPINION

LILLIE, P. J.— ▪ ▪ ▪ ▪ ▪ Home Budget Loans, Inc. (HBL) appeals from judgment dismissing its second amended cross-complaint (cross-complaint) as to cross-defendant Jacoby & Meyers Law Offices (J & M) after the general demurrer of J & M to the cross-complaint was sustained without leave to amend.[1]

### FACTS

The cross-complaint contained causes of action for intentional misrepresentation, negligent misrepresentation and implied indemnity. The first cause of action (intentional misrepresentation) alleged: Cross-complainant HBL is a licensed real estate broker acting in the capacity of a mortgage broker. As a condition of arranging a loan for one Ada Austin, HBL required that she consult with an attorney, have the attorney review the loan documentation and provide a written verification to HBL that the attorney had explained the terms of the loan transaction to Austin and that she understood those terms and wished to proceed with the loan. Austin consulted with cross-defendant Nathan Ucuzoglu, an attorney employed by cross-defendant J & M, and delivered to Ucuzoglu all of the documentation necessary to review the loan transaction and ensure that Austin understood the terms of the transaction and desired to go through with it. Prior to his consultation with Austin, Ucuzoglu was advised that HBL would not proceed with the proposed loan transaction unless Austin consulted with an attorney, the attorney reviewed the loan documentation and provided a written verification to HBL that Austin had consulted an attorney, that the attorney had explained the terms of the transaction to Austin, and that she understood such terms and desired to proceed with the loan. Austin retained Ucuzoglu who reviewed the proposed loan transaction with her. By letter (a copy of which was attached to the cross-complaint and incorporat-

---

[1] Actually HBL purports to appeal from the order sustaining demurrer without leave to amend. An order sustaining a demurrer is not appealable; the appeal must be taken from the ensuing judgment of dismissal. (*Lavine* v. *Jessup* (1957) 48 Cal.2d 611, 614 [311 P.2d 8].) It does not appear from the record on appeal that a judgment of dismissal was entered on the cross-complaint. However, in order to reach the merits of the appeal, we deem the order sustaining the demurrer to incorporate a judgment dismissing the cross-complaint as to J & M and treat the notice of appeal as applying to the judgment. (*Farmers Ins. Exchange* v. *State of California* (1985) 175 Cal.App.3d 494, 499 [221 Cal.Rptr. 225]; *Munoz* v. *Davis* (1983) 141 Cal.App.3d 420, 431 [190 Cal.Rptr. 400].)

Because the sustaining of the demurrer left no issue to be decided between HBL and demurring cross-defendant J & M, the judgment of dismissal is appealable even though the cross-action is still pending as to cross-defendant Nathan Ucuzoglu. (*Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 821, fn. 3 [122 Cal.Rptr. 745, 537 P.2d 865]; *Gilbert* v. *Sacramento Unified School Dist.* (1968) 258 Cal.App.2d 505, 508 [65 Cal.Rptr. 913].)

ed therein by reference), Ucuzoglu represented to HBL that he reviewed the documents regarding the loan request by Austin through HBL and explained to Austin the terms of the loan transaction, including the placement of a lien on her residence; Austin understood the terms of the transaction and wished to proceed with it.[2] Such representations were false. The true facts were that Ucuzoglu did not explain the terms of the proposed transaction to Austin; Austin did not understand that a lien was to be placed on her residence; she did not understand the terms of the proposed loan, was unable to "read and write English," and did not give knowing consent to proceed with the transaction. Ucuzoglu knew his representations were false and made them with the intent to deceive HBL and induce it to make a loan to Austin. HBL was ignorant of the falsity of Ucuzoglu's representations and believed them to be true. In reliance on the representations HBL closed the loan transaction and disbursed the proceeds of the loan. Had HBL known the true facts it would not have taken such action. HBL's reliance on Ucuzoglu's representations was justified because Ucuzoglu is a licensed attorney and communicated the representations on the letterhead of J & M, a law firm. As a proximate result of said misrepresentations HBL has been damaged in that it has been sued by Austin, the plaintiff in the within action. Austin's complaint sets forth causes of action for rescission based on fraud, conspiracy, intentional infliction of emotional distress and common counts, and seeks damages in excess of $15,000.

The second, third and fourth causes of action of the cross-complaint alleged, respectively, negligent misrepresentation and HBL's right to costs and indemnification by cross-defendants in the event HBL is found liable to plaintiff Austin in the main action.

J & M demurred generally to the cross-complaint, and each cause of action thereof, on the ground that J & M, as Austin's attorney, is not liable to HBL for J & M's alleged failure to explain the loan transaction to Austin and her consequent lack of comprehension of the transaction.

The trial court sustained the demurrer without leave to amend as to all causes of action and dismissed the cross-complaint as to J & M.

---

[2] The letter, written on stationery bearing the letterhead of J & M and signed by Ucuzoglu, read: "TO WHOM IT MAY CONCERN: [¶] I have reviewed the papers concerning the loan requested by Mrs. Austin through HOME BUDGET LOAN [*sic*]. I have explained to her that a lien is to be placed on her residence located at 217 W. Coca Street, Compton, California. Also I have explained the terms and I am satisfied that she understands and wishes to proceed with the transaction."

## DISCUSSION

An attorney advising a client owes no duty to third persons affected by that advice "in the absence of any showing that the legal advice was foreseeably transmitted to or relied upon by plaintiffs or that plaintiffs were intended beneficiaries of a transaction to which the advice pertained." (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 339 [134 Cal.Rptr. 375, 556 P.2d 737].) In *Goodman, supra,* plaintiffs sought damages from defendant, an attorney, for losses they incurred on stock purchased from defendant's clients. Plaintiffs alleged defendant negligently advised his clients the stock could be sold by them to third persons without jeopardizing the exempt status of the stock under the Securities Act of 1933. The alleged result of the purchase was an order by the Securities and Exchange Commission suspending exemption of the stock with consequent loss in the stock's value, to plaintiffs' damage. The trial court sustained a general demurrer to the complaint without leave to amend and entered judgment of dismissal. The Supreme Court affirmed stating: "The present defendant had no relationship to plaintiffs that would give rise to his owing plaintiffs any duty of care in advising his clients that they could sell the stock without adverse consequences. There is no allegation that the advice was ever communicated to plaintiffs and hence no basis for any claim that they relied upon it in purchasing or retaining the stock. Nor was the advice given for the purpose of enabling defendant's clients to discharge any obligation to plaintiffs. Thus, there is no allegation that plaintiffs had any relationship to defendant's clients or to the corporation as stockholders or otherwise when the advice was given." (*Goodman* v. *Kennedy, supra,* 18 Cal.3d at pp. 343-344, fn. omitted.)

In so concluding, the *Goodman* court specifically distinguished *Roberts* v. *Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104 [128 Cal.Rptr. 901], another action by a nonclient against an attorney: "We are therefore not concerned with such cases as *Roberts* . . . in which an attorney gives his client a written opinion with the intention that it be transmitted to and relied upon by the plaintiff in dealing with the client. In that situation the attorney owes the plaintiff a duty of care in providing the advice because the plaintiff's anticipated reliance upon it is 'the end and aim of the transaction.' [Citation.]" (*Goodman, supra,* 18 Cal.3d at p. 343, fn. 4.) In *Roberts, supra,* a law firm provided its client with a letter describing a particular organization as a general partnership, knowing the letter would be shown to a prospective lender in order to induce him to loan money to the organization. The letter did not disclose the belief of some of the general partners that the entity was a limited partnership or a corporation. When the entity defaulted on the loan the lender sued the law firm alleging fraud

and negligent misrepresentation. The court concluded that a cause of action for negligent misrepresentation was stated: "The defendants' opinion concerning the status of the partners was rendered for the purpose of influencing plaintiff's conduct, and harm to him was clearly foreseeable. We have no difficulty, therefore, in determining that the issuance of a legal opinion intended to secure benefit for the client, either monetary or otherwise, must be issued with due care, or the attorneys who do not act carefully will have breached a duty owed to those they attempted or expected to influence on behalf of their clients." (*Roberts, supra,* 57 Cal.App.3d at p. 111.)

The instant case presents a *Roberts-* rather than a *Goodman*-type situation. The cross-complaint alleged that before consulting with its client Austin, J & M (through its employee Ucuzoglu) was advised that HBL would not arrange a loan for Austin unless she provided written verification that she had consulted an attorney regarding the proposed loan transaction, the attorney had explained the terms of the transaction to her and she understood the terms. With such knowledge J & M prepared a letter which falsely stated that J & M had explained to Austin the terms of her proposed loan transaction with HBL, including the placement of a lien on her residence, and that Austin understood the transaction. In reliance on the misrepresentations contained in the letter, HBL closed the loan transaction. "In simple terms, defendants are alleged to have prepared a false and/or misleading document, the purpose of which was to influence plaintiffs' conduct. It is the attorney's knowledge regarding the purpose of his work product which *Roberts* and *Goodman* both hold establishes a duty to those whose conduct has been influenced." (*Courtney* v. *Waring* (1987) 191 Cal.App.3d 1434, 1444 [237 Cal.Rptr. 233].)

Public policy does not foreclose J & M's liability to HBL under the facts alleged. On the contrary, a majority of the policy factors relevant in determining the question of liability support its existence in this case. " 'The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.' " (*Goodman* v. *Kennedy, supra,* 18 Cal.3d 335, 342-343, quoting from *Biakanja* v. *Irving* (1958) 49 Cal.2d 647, 650 [320 P.2d 16, 65 A.L.R.2d 1358].)

The *Goodman* court also ruled that "[t]o make an attorney liable for negligent *confidential* advice not only to the client who enters into a transaction in reliance upon the advice but also to the other parties to the transaction with whom the client deals at arm's length would inject undesirable self-protective reservations into the attorney's counselling role." (18 Cal.3d at p. 344, italics added.) Here, as distinguished from *Goodman,* HBL allegedly received and relied upon the misrepresentations in the letter prepared by J & M. Further, the contents of the letter were not confidential inasmuch as it was addressed "To Whom It May Concern."

The elements of fraud are a misrepresentation, knowledge of its falsity, intent to defraud, i.e., to induce reliance, justifiable reliance, and resulting damage. (*Watts* v. *Crocker-Citizens National Bank* (1982) 132 Cal.App.3d 516, 522, fn. 2 [183 Cal.Rptr. 304].) The elements of negligent misrepresentation, a form of deceit, are misrepresentation of a past or existing material fact, without reasonable ground for believing it to be true, and with intent to induce another's reliance on the fact misrepresented; ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed; and resulting damage. (*Fox* v. *Pollack* (1986) 181 Cal.App.3d 954, 962 [226 Cal.Rptr. 532].) The first and second causes of action of the cross-complaint allege each of the elements of fraud and negligent misrepresentation, respectively. To the extent the two theories of recovery are inconsistent, HBL is not thereby barred from pleading both.[3] (See *Roberts* v. *Ball, Hunt, Hart, Brown & Baerwitz, supra,* 57 Cal.App.3d 104, 110.)

The third and fourth causes of action of the cross-complaint (labeled, respectively, "implied indemnity" and "apportionment") allege: HBL was served with the complaint in this action wherein it is alleged that HBL is liable to plaintiff Austin for damages. The damages, if any, sustained by plaintiff were caused entirely by the acts and omissions of cross-defendants in negligently and/or fraudulently performing their duty as lawyers for plaintiff; any negligence and unlawful conduct on the part of HBL was passive and secondary to the negligence and unlawful conduct of cross-defendants. If HBL is found liable to plaintiff in the main action it is entitled to reasonable costs and expenses incurred in this lawsuit (third cause of action) and indemnification by cross-defendants for that portion of plaintiff's damages caused by them (fourth cause of action). "Al-

---

[3] While duty is not an element of fraud in the traditional sense, a duty is owed to others to refrain from intentionally tortious conduct. Accordingly, any inference arising from the trial court's order sustaining the demurrer that the element of duty bars HBL's cause of action for fraud is not supported by law. (See *Cicone* v. *URS Corp.* (1986) 183 Cal.App.3d 194, 202 [227 Cal.Rptr. 887].)

though there can be no indemnity without joint and several liability by the prospective indemnitor and indemnitee [citation], indemnity does not require a 'special' relationship between the cotortfeasors. [Citation.] It only requires a significant difference in the kind or quality of the conduct of each tortfeasor." (*Cicone* v. *URS Corp., supra,* 183 Cal.App.3d 194, 212.) The allegations of the third and fourth causes of action satisfy that requirement.

The demurrer was improperly sustained as to each cause of action of the cross-complaint.

## DISPOSITION

The judgment dismissing the cross-complaint as to cross-defendant J & M is reversed. The trial court is directed to overrule J & M's demurrer to the cross-complaint and allow J & M a reasonable time within which to file an answer thereto. HBL shall recover its costs on appeal.

Woods (Fred), J., and Newman, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.