Lawrence FIRST, Lorie First, Thomas Ennis, Julia Ennis, Agustin Garibay, Steve Lucero, Gary Sterkel, Paul Locher, Cheryl Locher, Dean Dennis, and Dorothy Dennis, Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY, an Illinois Corporation; Shadowbrook Design Group, Inc., a California Corporation; W.S.C., a California Corporation a/k/a and d/b/a Western States Companies, Western States Geotechnical and Western States Construction; and Does 1–100, Defendants.

No. CV 98–3394 RJK.

United States District Court, C.D. California.

June 25, 2002.

Norman J. Watkins, Lynberg & Watkins, Orange, CA, Ruth Segal, Stephen M. Harber, Lynberg & Watkins, Los Angeles, CA, Mark Brifman, Mark Brifman Law Offices, Mission Hills, CA, Mark C. Bailey, Bailey & Associates, Irvine, CA, for Plaintiffs.

Gregory Michael MacGregor, Deborah A. Berthel, Macgregor & Berthel, Woodland Hills, CA, for Defendants

## ORDER GRANTING DEFENDANT ALLSTATE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFFS THOMAS AND JULIA ENNIS

KELLEHER, District Judge.

On June 17, 2002, the Court heard Defendant Allstate Insurance Company's ("Allstate") motion for summary judgment of Plaintiffs Thomas and Julia Ennis' claims for breach of contract, breach of the covenant of good faith and fair dealing (the "contract claims"), negligent and intentional misrepresentation (the "fraud claims") and civil RICO (collectively, the "remaining claims"). The Court took the motion under submission following oral argument. After considering the papers submitted by the parties, the case file and oral argument, the Court **GRANTS** Allstate's motion.

## I. BACKGROUND

Plaintiffs' claims arise out of the adjustment of their insurance claim for property damage sustained in the 1994 Northridge earthquake and their subsequent retention of Shadowbrook Design Group ("Shadowbrook") to make repairs. Shortly after the earthquake, Plaintiffs reported to Allstate that their home had suffered damage. (Pretrial Conference Order ("PTO"), ¶ 5 at p. 3.) Allstate retained Shadowbrook to conduct a "Phase I structural engineering investigation" of the damage. (*Id.*) Shadowbrook prepared a "Structural Investigation and Report" ("Shadowbrook report" or "report") following its investigation of Plaintiffs' home. (*Id.*) Plaintiffs ultimately hired Shadowbrook to perform repair work on their home. (*Id.*)

In May of 1998, Plaintiffs and nine others filed suit against Defendants Allstate, Shadowbrook and Western States Companies ("Western States"). The Ennises are the sole remaining Plaintiffs. Allstate is the sole remaining defendant.[1] The final pretrial conference was held on April 1, 2002. The PTO alleges five claims: (1) RICO violations, 18 U.S.C. §§ 1961–1968; (2) negligent misrepresentation; (3) intentional misrepresentation; (4) breach of the

---

**1.** Plaintiffs dismissed all claims against Shadowbrook at the April 1, 2002 pretrial conference. On May 17, 2002, Plaintiffs filed a request for default judgement against Western States.

covenant of good faith and fair dealing; and (5) breach of contract. Trial is currently set for October 1, 2002.

■ On May 17, 2002, Allstate filed a motion for summary judgment.[2] On May 24, 2002 Plaintiffs filed their opposition. On June 3, 2002, Allstate filed a reply. On June 4, 2002, the Court ordered Plaintiffs to file a sur-reply. On June 11, 2002, Plaintiffs filed their sur-reply.[3]

At the hearing on June 17, 2002, the Court denied Plaintiffs' request for judicial notice of the Amended Second Superseding Indictment and the Guideline Presentence Report and Recommendation in *United States of America v. LeAndre Drake Davis*, Case No. CR99–896(B)–CAS. Plaintiffs indicated that they would subsequently lodge the judgment of conviction in the *Davis* case for purposes of judicial notice.[4] The Court also denied Allstate's motion to strike Plaintiffs' exhibit "O" (the addendum to the report of Plaintiffs' expert, Charles Randle) as moot in light of the anticipated disposition of the motion.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A fact is material only if it is relevant to a claim or defense and its existence might affect the suit's outcome. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir.1987). The court must view the facts and draw inferences in the manner most favorable to the non-moving party. *See Chaffin v. United States*, 176 F.3d 1208, 1213 (9th Cir.1999).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir.1990). To demonstrate that the nonmoving party has no evidence, the moving party must affirmatively show the absence of such evidence in the record, either by deposition testimony, the inadequacy of documentary evidence or by any other form of admissible evidence. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. The moving party has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. *See id.* at 325, 106 S.Ct. 2548.

---

**2.** Allstate's motion is brought pursuant to the PTO. (*See* PTO, ¶ 12j (indicating Allstate's intention to bring a motion for summary judgment/adjudication).)

**3.** Allstate moves to strike the declaration of Thomas Ennis submitted in support of Plaintiffs' sur-reply. To the extent the declaration contradicts Mr. Ennis' prior deposition testimony, the Court GRANTS the motion. *See Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 543–44 (9th Cir.1975) ("a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony").

**4.** On June 18, 2002, Plaintiffs filed a declaration stating that the judgment of conviction in the *Davis* case could not be found and attached the Criminal Minutes of a September 8, 2000 hearing in the case. (*See* Declaration of Ruth Segal re Lodging Judgment, ¶¶ 1–2 & Ex. 1 [Criminal Minutes].) The Court hereby GRANTS Plaintiffs' request for judicial notice of the Criminal Minutes.

A non-moving party's allegation that factual disputes persist between the parties will not automatically defeat an otherwise properly supported motion for summary judgment. *See* Fed.R.Civ.P. 56(e) (nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial"). "[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Fazio v. City and County of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252, 106 S.Ct. 2505). If the adverse party does not so respond, summary judgment shall be entered against the adverse party.

## B. Analysis

Allstate seeks summary judgment on the ground that Plaintiffs cannot establish a prima facie case as to any of their claims. In support of their claims, Plaintiffs allege that Allstate: (1) inaccurately assessed the damage to Plaintiffs' house; (2) recommended inaccurate methods to repair the damage; and (3) "approved" Plaintiffs' use of Shadowbrook as the contractor to complete the repairs. (PTO, ¶ 7 at p. 6, 9; Opp. 5, 10, 18–19.)

### 1. Allstate Is Entitled To Summary Judgment Of The Contract Claims

#### a. Breach of Contract

To prevail on its claim for breach of contract, Plaintiffs must establish: (1) the existence of a contract; (2) Plaintiffs' performance or excuse for nonperformance; (3) Allstate's breach; and (4) damage to Plaintiffs therefrom. *See Regan Roofing Co., Inc. v. Superior Court*, 24 Cal.App.4th 425, 435, 29 Cal.Rptr.2d 413 (1994). Allstate argues, in part, that Plaintiffs cannot prevail on their breach of contract claim because Plaintiffs cannot establish a denial of policy benefits (*i.e.*, breach) nor any damage stemming therefrom. (Mot. at 4, 6, 20; Reply at 7, 12–15.)

In support of their claims, Plaintiffs argue that they "settled their [insurance] claim for less than they were entitled to receive because the real damage to their home was never properly addressed." (Opp. at 11.) Specifically, Plaintiffs argue that the Shadowbrook report on which both Allstate and Plaintiffs allegedly relied in settling Plaintiffs' insurance claim (1) failed to consider the full extent of the damage to their home and (2) made improper repair recommendations. (*Id.* at 4, 17–19.)

#### (1) The Damage Assessment

■ To the extent Plaintiffs argue that Allstate breached the insurance contract by inaccurately assessing the extent of damage to Plaintiffs' home, Plaintiffs have failed to present any evidence of injury therefrom. Plaintiffs' insurance contract obligates Allstate to pay the actual cash value of the damage caused by the earthquake. (*See* Pls.' Ins. Contract, p. 20.)[5] By June of 1996, when Allstate finalized Plaintiffs' insurance claim, Allstate had paid Plaintiffs a total of $158,080.04 for the

---

**5.** Plaintiffs filed a copy of their insurance contract on June 12, 2002, pursuant to the Court's June 11, 2002 minute order. Although a copy of an insurance contract had been submitted by Allstate, it was identified as a copy of the contract attached to Plaintiffs' complaint. (*See* Allstate's Statement of Uncontroverted Facts and Conclusions of Law, ¶ 1.) However, no exhibits are attached to the original complaint in this case. Attached to the First Amended Complaint ("FAC") is a copy of an insurance contract, but it is identified only as an "exemplar policy" whose terms and conditions are alleged to be similar to those of Plaintiffs' policy. (*See* FAC, ¶ 25 & Ex. A.)

damage to their dwelling. (*See* Declaration of Gregory MacGregor ("MacGregor Decl."), Ex. B [Dep. of Thomas Ennis], pp. 122–124; Ex. E [letter from Allstate], p. 141.) To establish injury, therefore, Plaintiffs must show that Allstate underpaid Plaintiffs for the actual cash value of the damage to their dwelling, *i.e.*, that the damage to their house exceeded $158,080.04.

Plaintiffs present the report of their engineering expert, Charles Randle, to establish that Allstate's assessment of the damage was inaccurate and, consequently, Plaintiffs were underpaid. Mr. Randle opines, in part, that the damage to Plaintiffs' house has been "extensive" and that the Shadowbrook report on which Allstate allegedly relied is "inaccurate … and vague" in its assessment of that damage. (Declaration of Ruth Segal ("Segal Decl."), Ex. O [addendum to report of Charles Randle], p. 72–73.) Mr. Randle concludes that, "[b]ased on the vagueness and inaccuracies noted in the Shadowbrook … report, any attempt at determination of estimates to repair would be impossible." (*Id.*, p. 74.)

Although Mr. Randle's opinion, if otherwise admissible, may be probative of whether Allstate's assessment of the damage was inaccurate, it does not address the issue of whether Plaintiffs were damaged thereby. Mr. Randle does not express an opinion on the amount Plaintiffs should have received based on an accurate assessment of the damage nor the amount necessary to correct the deficiencies he observes.

Plaintiffs apparently take the position that if the report inaccurately assessed the extent of damage, Plaintiffs were necessarily underpaid on their insurance claim. However, Plaintiffs must establish both breach *and* damage to prevail on their breach of contract claim. *See Regan Roofing Co., Inc.*, 24 Cal.App.4th at 435, 29

Cal.Rptr.2d 413. Plaintiffs present no evidence of (or even identify) what amount they should have received for the damage to their house. Furthermore, Plaintiffs do not address whether the $158,080.04 they received is insufficient to cover the cost of repair. Because Plaintiffs have not established a triable issue of fact as to injury, they cannot prevail on their theory that Allstate breached the contract by failing to accurately assess the extent of the damage to their dwelling.

### (2) The Repair Recommendations

■ To the extent Plaintiffs allege that Allstate breached the insurance contract by providing inaccurate recommendations for repairing the damage to their home, Plaintiffs have failed to establish that Allstate had a duty to make repair recommendations. Breach of contract arises where a party to the contract fails to perform as obligated under the terms of the contract. Thus Plaintiffs must demonstrate that Allstate had a contractual duty to make repair recommendations before its alleged nonperformance constitutes breach. *See Collin v. American Empire Ins. Co.*, 21 Cal.App.4th 787, 803, 807, 26 Cal.Rptr.2d 391 (1994) (insured has the burden of showing that claim falls within terms of policy).

Plaintiffs identify nothing (and the Court can find nothing) in their insurance contract that obligates Allstate to make repair recommendations. (*See* Plaintiffs' Ins. Contract, pp. 7–9 ("Dwelling Protection"), p. 20 ("Conditions" "How We Pay for a Loss").) Further, Plaintiffs identify no law imposing such an obligation. Because Plaintiffs have not established a triable issue of fact as to whether Allstate had a duty to make repair recommendations, they cannot prevail on their theory that Allstate breached the contract by failing to provide accurate recommendations.

### b. Breach of the Covenant of Good Faith and Fair Dealing

Allstate seeks summary judgment of Plaintiffs' claim for breach of the covenant of good faith and fair dealing (the "covenant") on the ground that such a claim cannot be maintained unless policy benefits are due and the insurer acted unreasonably. (Mot. at 6, 21–23.) Plaintiffs argue that Allstate breached its duty under the covenant by inadequately investigating Plaintiffs' insurance claim and failing to warn Plaintiffs against using Shadowbrook as their contractor to make repairs. (Opp. at 13–17.)

■■ The covenant acts as a "supplement to express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." *Waller v. Truck Ins. Exchange, Inc.,* 11 Cal.4th 1, 36, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995). "Absent [a] contractual right, however, the implied covenant has nothing upon which to act as a supplement, and 'should not be endowed with an existence independent of its contractual underpinnings.' " *Id.* (citing *Love v. Fire Ins. Exchange,* 221 Cal.App.3d 1136, 1153, 271 Cal.Rptr. 246 (1990)); *see Rattan v. United Servs. Automobile Ass'n,* 84 Cal.App.4th 715, 722–23, 101 Cal.Rptr.2d 6 (2000) (reasoning that insurer is not liable for breach of contract or bad faith based on conduct of insureds' contractor unless conduct amounts to denial of policy benefits by the insurer).

■ Therefore, to establish breach of the covenant, Plaintiffs must demonstrate that Allstate withheld policy benefits due under the contract (*i.e.*, breach of contract). *Love,* 221 Cal.App.3d at 1151, 271 Cal.Rptr. 246. As discussed above, Plaintiffs have failed to establish a triable issue of fact as to whether they were denied any policy benefits due under the contract. As such, Allstate is entitled to summary judgment of Plaintiffs' claim for breach of the covenant.

### 2. Allstate Is Entitled To Summary Judgment Of The Fraud Claims

To prevail on their claims for intentional and negligent misrepresentation, Plaintiffs must establish, among other things: (1) a material misrepresentation; (2) justifiable reliance; and (3) resulting damage. *Anderson v. Deloitte & Touche, LLP,* 56 Cal.App.4th 1468, 1474, 66 Cal.Rptr.2d 512 (1997) (intentional misrepresentation); *Home Budget Loans, Inc. v. Jacoby & Meyers Law Offices,* 207 Cal.App.3d 1277, 1285, 255 Cal.Rptr. 483 (1989) (negligent misrepresentation).

■ Allstate argues, in part, that Plaintiffs cannot prevail on their fraud claims because they cannot establish any of the above.[6] (Mot. at 7–8, 16–20; Reply at 5–6.) Plaintiffs argue that Allstate committed fraud by making misrepresentations (1) in the Shadowbrook report and (2) about Shadowbrook's qualifications as a contractor.

### a. Alleged Misrepresentations in the Shadowbrook Report

Plaintiffs argue that the Shadowbrook report misrepresented (1) the qualifica-

---

**6.** Allstate argues that Plaintiffs are entitled only to an "out of pocket" measure of damages for their fraud claims (*i.e.*, the difference in value between what Plaintiffs paid and what they received). (Mot. at 7–8.) However, Allstate's argument conflates "injury" as an element of Plaintiffs' claims with the potential "damages" they may recover. Aside from the fact that the "out of pocket" rule does not apply to Plaintiffs' fraud claims in this case because no purchase, sale or exchange of property is involved, the appropriate measure of Plaintiffs' potential recovery is not currently at issue. *See* Cal. Civ.Code § 3343; BAJI 12.56 use note.

tions of one of the investigators and authors of the report (who is also the president of Shadowbrook), LeAndre Davis; (2) the extent of the damage; and (3) the appropriate methods of repair. (Opp. at 14–19.) However, Plaintiffs have failed to produce evidence of injury resulting from any of the alleged misrepresentations. "In order to recover for fraud, as in any other tort, the plaintiff must ... prove the 'detriment proximately caused' by the defendant's tortious conduct." *Service by Medallion, Inc. v. Clorox Co.,* 44 Cal.App.4th 1807, 1818, 52 Cal.Rptr.2d 650 (1996) (citation omitted).

### (1) Qualifications of LeAndre Davis

■ In support of their argument that Allstate committed fraud by misrepresenting the qualifications of the company it sent to investigate Plaintiffs' insurance claim, Plaintiffs point to the testimony of Mr. Ennis. Mr Ennis states that an Allstate adjuster informed him that Shadowbrook would be responsible for the "structural engineering report" and that "he [*sic*] was appropriately qualified." (Segal Decl., Ex. C [Dep. of Thomas Ennis], p. 37.) In addition, Mr. Ennis testifies that "subsequent adjusters ... continued to support [his] belief that LeAndre Davis was an engineer and an architect." (*Id.,* Ex. D [Dep. of Thomas Ennis], p. 50.) Plaintiffs also point to the Shadowbrook report itself, which was signed by Mr. Davis as an "Architect/Staff Engineer," and who placed upon it an embossed stamp indicating that he was a licensed architect. (*Id.,* Ex. A [Shadowbrook report], p. 27.) It is undisputed, however, that Mr. Davis was not actually a licensed architect or engineer.

Even assuming that Allstate misrepresented Mr. Davis' architectural and engineering qualifications, Plaintiffs have failed to produce evidence that they were injured thereby. Plaintiffs point to no evidence demonstrating that Allstate's alleged mis-representation of Mr. Davis' qualifications as an engineer or architect contributed to the underpayment of their insurance claim. As discussed above, Plaintiffs have failed to establish a triable issue of fact as to whether they were underpaid for their insurance claim. Therefore, Plaintiffs' claims of fraud as to the qualifications of Mr. Davis must fail. *See Hill v. Wrather,* 158 Cal.App.2d 818, 825, 323 P.2d 567 (1958) ("fraud without damage or injury is not remediable"); *Service by Medallion, Inc.,* 44 Cal.App.4th at 1818, 52 Cal. Rptr.2d 650.

### (2) The Damage Assessment

■ Failure to produce evidence of injury is similarly fatal to Plaintiffs' argument that Allstate committed fraud in misrepresenting the extent of the damage to Plaintiffs' home. As with their contract claims, Plaintiffs rely on the opinion of their expert, Mr. Randle, to the effect that the Shadowbrook report is so "inaccurate ... and vague" in its assessment of the damage to Plaintiffs' home that "any attempt at determination of estimates to repair would be impossible." (*Id.,* Ex. O, p. 72– 74.) As with Plaintiffs' contract claims, however, Plaintiffs have failed to establish a triable issue of fact as to whether they were underpaid as a result. And as with Plaintiffs' contract claims, evidence of such an injury is an essential element of Plaintiffs' fraud claim. *See Hill,* 158 Cal.App.2d at 825, 323 P.2d 567; *Service by Medallion, Inc.,* 44 Cal.App.4th at 1818, 52 Cal. Rptr.2d 650. Without such evidence, Plaintiffs' claim of fraud as to the damage assessment also fails.

### (3) The Repair Recommendations

■ To the extent Plaintiffs allege that Allstate committed fraud by misrepresenting the necessary method to repair the damage to their home, Plaintiffs again fail to establish damage therefrom. Plaintiffs

contend that they relied on the repair recommendations in the Shadowbrook report "in determining ... the necessary repairs[.]" (Opp. at 17; Sur-reply at 2.) Plaintiffs argue that "the repair work is improper and inadequate, not only because it was not done properly, but because it was not properly guided by recommendations for repairs by a qualified engineer or architect[.]" (*Id.* at 19.) However, Plaintiffs fail to identify any evidence supporting their argument.

Plaintiffs again rely on the report of their expert, Mr. Randle, who opines that the information in the Shadowbrook report "is quantitative and inaccurate as related to methods of stucco repair" and "vague" as to the method of repairing "framing distress[.]" (Segal Decl., Ex. O, p. 73.) In addition, Mr. Randle states that "[t]he remedial work ... is inadequate and lacks the control of a qualified designer, engineer or architect." (*Id.,* p. 74.) However, nothing in Mr. Randle's report establishes that the allegedly inadequate repairs undertaken by Shadowbrook or its subcontractors were based upon the recommendations in the report. Indeed, Plaintiffs identify no evidence whatsoever that the recommendations from the report were the basis for the repairs.

Even assuming the Shadowbrook report misrepresents the necessary repair methods and Plaintiffs' relied thereon, Plaintiffs have not established a triable issue of fact regarding whether they were injured as a result. Therefore, for the same reasons previously discussed, Plaintiffs' claim of fraud as to the repair recommendations must fail.

**b. Alleged Misrepresentations Regarding Shadowbrook's Role as a Contractor**

Plaintiffs also contend that Allstate committed fraud by misrepresenting Shadowbrook's qualifications as a contractor. Specifically, Plaintiffs argue that they would not have hired Shadowbrook as their contractor if: (1) Allstate had not "approved" and "encouraged" the decision; and (2) Mr. Davis had not falsely represented his company as a "division" of Allstate. (Opp. at 5, 10, 13–15.)

**(1) Allstate's "Approval"**

Plaintiffs point to the testimony of Mr. Ennis in support of their claim that Allstate "approved" Plaintiffs' decision to hire Shadowbrook (despite Allstate's alleged knowledge of Shadowbrook's fraudulent conduct). Mr. Ennis testifies that he approached Mr. Davis about the possibility of undertaking the repair work when Shadowbrook first inspected Plaintiffs' house. (MacGregor Decl., Ex. B [Dep. of Thomas Ennis], p. 153.) Subsequently, Mr. Ennis informed an Allstate adjuster "that [he] was hiring [Shadowbrook] as the contractor." (Segal Decl., Ex. E [Dep. of Thomas Ennis], p. 63.) Mr. Ennis testifies that he "can't recall" whether his adjuster told him Shadowbrook was licensed as a contractor. (*Id.,* p. 64.) Further, Mr. Ennis testifies that no one told him directly to hire Shadowbrook as his contractor, but that he "assumed when [he] told [the adjuster] that if [the adjuster] felt that it was not an appropriate move, [the adjuster] would have told [him]." (*Id.,* pp. 62, 64.)

Even assuming Allstate knew of Shadowbrook's wrongdoing at the time, Plaintiffs' evidence establishes only that Allstate failed to warn Plaintiffs. For an omission to constitute an actionable misrepresentation, Plaintiffs must establish that Allstate had a duty to disclose. *Scafidi v. Western Loan & Bldg. Co.,* 72 Cal.App.2d 550, 562, 165 P.2d 260 (1946) (silence or concealment alone will not establish fraudulent concealment absent a fiduciary or confidential relationship or circumstances otherwise creating a duty to speak). Allstate, as an insurer, is sub-

ject to some of the duties of a fiduciary but is not in a strict fiduciary relationship with its insureds. *Thompson v. Cannon,* 224 Cal.App.3d 1413, 1417, 274 Cal.Rptr. 608 (1990). Short of arguing that Allstate, as a "quasi fiduciary," has failed in its duty, Plaintiffs identify no case law supporting (or even addressing) the imposition of a duty to disclose on an insurer under the facts of this case. Therefore, Plaintiffs have failed to establish a triable issue of fact regarding whether Allstate made an actionable misrepresentation.

### (2) Mr. Davis' Representations

■ To the extent that Plaintiffs argue that Allstate committed fraud based on the misrepresentations of Mr. Davis, Plaintiffs have failed to establish that the alleged misrepresentations can be imputed to Allstate. Plaintiffs point to evidence that at one point, Mr. Davis had a sign on his vehicle reading "You're in Good Hands With Allstate, Catastrophic Disaster and Structural Engineering Team." (Segal Decl., Ex. B, p. 36.) Further, Plaintiffs state (without citing any evidence) that "Mr. Davis told Mr. Ennis that he was 'considered a valuable team member of Allstate'." (Opp. at 13.)

Plaintiffs apparently contend that Mr. Davis' conduct and statements amount to a misrepresentation by Allstate as to the relationship between itself and Shadowbrook on the ground that Allstate allegedly knew about the misrepresentations. (*Id.* at 15–16.) However, aside from referring to Shadowbrook as Allstate's "agent," Plaintiffs make no showing that Mr. Davis was an employee or agent of Allstate such that it is liable for his conduct. (Surreply at 3–4.) Without such a showing, the al-

leged misrepresentation of a third party cannot be imputed to Allstate. *Inglewood Teachers Ass'n v. Public Employment Relations Bd.,* 227 Cal.App.3d 767, 780, 278 Cal.Rptr. 228 (1991) ("the burden of proving agency, as well as the scope of the agent's authority, rests upon the party asserting the existence of agency and seeking to charge the principal with the representation of the agent"). Therefore, Plaintiffs again fail to establish a triable issue of fact as to whether Allstate made an actionable misrepresentation.

### 3. Allstate Is Entitled To Summary Judgment Of The RICO Claim

■ The predicate act upon which Plaintiffs base their RICO claim is mail fraud. (*See* PTO, ¶ 7 at p. 11.) Plaintiffs allege that Allstate committed mail fraud by mailing the allegedly fraudulent Shadowbrook reports to Plaintiffs and others. (*Id.*) To prevail on their RICO claim, Plaintiffs must prove that they were injured by the conduct constituting the predicate act.[7] *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 495–96, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

As discussed above, Plaintiffs have not established a triable issue of fact as to whether they were injured by the alleged fraud concerning the Shadowbrook report. Plaintiffs cannot, therefore, survive summary judgment on their RICO claim.

### III. DISPOSITION

For the foregoing reasons, the Court GRANTS Allstate's motion for summary judgment of Plaintiffs' remaining claims. IT IS SO ORDERED.

---

7. Allstate argues that because Plaintiffs cannot show "out of pocket" loss, they cannot recover on their RICO claim. (Mot. at 9–10.) However, Plaintiffs need only demonstrate a tangible financial loss or injury to prevail on their RICO claims (*e.g.,* receiving less than owed by Allstate); it is not required that they establish affirmative expenditures. *See Berg v. First State Ins. Co.,* 915 F.2d 460, 464 (9th Cir.1990) (explaining that RICO's "actual injury" requirement contemplates a "financial loss or injury").

## JUDGMENT IN FAVOR OF DEFEN-DANT ALLSTATE INSURANCE COMPANY AGAINST PLAIN-TIFFS THOMAS AND JULIA EN-NIS

This action came on for hearing on June 17, 2002, Honorable Robert J. Kelleher, United States District Court Judge Presiding, on the motions of Defendant Allstate Insurance Company for Summary Judgment, or in the Alternative, Summary Adjudication of Issues. The Court having read the moving, opposing and reply papers on file herein, and having heard oral argument from counsel, and the Court having granted said Motion for Summary Judgment,

**IT IS HEREBY ORDERED, AD-JUDGED AND DECREED** that Plaintiffs shall take nothing by way of their complaint, that the action be dismissed on the merits and that Defendant Allstate Insurance Company recover its costs in the amount of _____.