**MV TRANSPORTATION, INC., Plaintiff,**

v.

**OMNE STAFF LEASING, INC., Omne Staffing, Inc., American Protection Insurance Co., Wachovia Corp., Wachovia Insurance Services, First Union Corp., First Union Insurance Services et. al., Defendants.**

**No. CIV S032288DFLGGH.**

United States District Court, E.D. California.

March 22, 2005.

---

Arthur Joel Levine, Law Office of Arthur J. Levine, Fullerton, CA, for Plaintiff.

John L. Barber, Lewis Brisbois Bisgaard and Smith, Los Angeles, CA, Bruce Daniel Celebrezze, Sedgwick Detert Moran And Arnold, San Francisco, CA, for Defendants.

## MEMORANDUM OF OPINION AND ORDER

LEVI, District Judge.

This case concerns a dispute over coverage under a workers' compensation insurance policy issued by defendant American Protection Insurance Company ("AMPICO"). AMPICO and defendant Wachovia Securities, Inc. ("Wachovia") move for summary judgment on all claims made against them. Plaintiff MV Transportation, Inc. ("MV Transportation") moves for summary judgment on its duty to defend claim against AMPICO.

### I.

The following facts are not in dispute. MV Transportation is a bus and transportation company located in Fairfield, California, that employs over 6000 workers in 22 states. (FAC ¶ 7; Wachovia Mot. at 1.) Omne Leasing Services, Inc. ("Leasing") is a Florida corporation, and Omne Staffing, Inc. ("Staffing") is a Delaware corporation. (AMPICO Req. for Judicial Notice Exs. 7, 8.) According to the moving parties, Staffing is the parent company of Leasing. (Wachovia Mot. at 1; Sinins Decl. ¶ 2.) Staffing, Leasing, and other Omne-related companies are, in part, employee leasing or "professional employment" companies. (FAC ¶ 11.)[1] AMPICO is an insurance

---

1. Professional employment companies provide a variety of services to clients by hiring their clients' employees as their own and then leasing those employees back to their clients. (FAC ¶ 11.) Most notably for this case, the professional employment companies use this structure to procure affordable workers' compensation insurance by consolidating all of the employees that they "lease" out to clients under one policy. (*Id.*)

company that is a subsidiary of Kemper Insurance Companies and Kemper National Insurance Companies. (Knoebel Decl. ¶ 2.) Wachovia is an insurance broker that aids companies in procuring insurance.[2] (Wachovia Mot. at 1.)

In June 2002, Staffing's chief executive officer, Barry Sinins, requested Wachovia's assistance in obtaining a workers' compensation policy. (*Id.;* Sinins Decl. ¶¶ 4, 5.) On July 31, 2002, AMPICO, with Wachovia acting as broker, issued the workers' compensation and employer's liability policy (the "policy") at issue in this case. (AMPICO Mot. at 1.) The policy provided coverage for the period of July 31, 2002 through July 31, 2003. (*Id.*) On the policy's "Information Page," Item 1 lists the "Named Insured and Mailing Address" as "Omne Staffing, Inc., 4 Commerce Drive, Cranford, New Jersey 07016." (*Id.*) The policy states, "You are insured if you are an employer named in Item 1 of the Information Page." (*Id.*)

On August 15, 2002, MV Transportation entered into a Client Service Agreement ("CSA") with Leasing. (FAC ¶ 12.) The CSA's term started on August 1, 2002, and, unless renewed under the terms of the CSA, terminated on December 31, 2003. (*Id.*) The CSA specified that Leasing would procure workers' compensation insurance for the employees it leased to MV Transportation. (*Id.* ¶ 11.) Under the CSA, MV Transportation was required to tender payment to Staffing, not Leasing; however, the CSA did not otherwise indicate that Staffing was a party to the agreement. (Id. ¶ 15.)

As early as January 2003, MV Transportation began having concerns about Leasing's performance under the CSA. (Fisher Decl. Ex. E.) Leasing failed to pay payroll taxes for MV Transportation employees, did not tender payment to the clinics where injured MV Transportation workers had received treatment, and mishandled the 2002 W–2 forms for MV Transportation employees. (*Id.* Ex. H.) At some point during March 2003, the CSA between Leasing and MV Transportation was terminated, and on March 13, 2003, MV Transportation obtained a workers' compensation insurance policy directly from a different insurance carrier to cover its employees. (FAC ¶¶ 19, 20.)

In April 2003, MV Transportation asked AMPICO to provide coverage for the workers' compensation claims filed by MV Transportation employees between August 2002 and March 2003. (*Id.* ¶ 20.) Up to this time, MV Transportation and AMPICO had no direct contact with one another. (AMPICO Mot. at 11.) AMPICO originally agreed to adjust the claims, with a full reservation of rights. (*Id.*) However, by June 2003, after further review of the situation, AMPICO changed its position. (*Id.*) AMPICO asserted that it had issued a policy to Staffing, not Leasing; therefore, the policy did not provide coverage to MV Transportation, since MV Transportation had only contracted with Leasing. (*Id.*)

MV Transportation filed this action in Solano County Superior Court on October 21, 2003, and AMPICO removed the action on November 3, 2003. In March 2004, Staffing, Leasing, and their related entities became the subject of a criminal investigation by the FBI and various state insurance commissioners. (Wachovia Mot. at 1.) Thereafter, Staffing and Leasing each filed for protection under Chapter 11, and an automatic stay went into effect under 11 U.S.C. § 362 as to any other actions involving those entities. MV Transportation's claims against Staffing and Leasing

---

**2.** During the relevant time period, Wachovia was known as First Union Insurance Services Agency, Inc. (Wachovia Mot. at 1.)

have been stayed. AMPICO and Wachovia now bring motions for summary judgment on MV Transportation's claims: (1) breach of contract, unjust enrichment, and duty to defend as against AMPICO and (2) negligent procurement of insurance and negligent misrepresentation as against Wachovia.[3] MV Transportation moves for summary judgment on its duty to defend claim against AMPICO.

## II. *Breach of Contract*

Under California law, the plain language of an insurance contract controls. "Courts will not strain to create an ambiguity where none exists." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 18–19, 44 Cal. Rptr.2d 370, 900 P.2d 619 (1995).[4] "A policy provision will [only] be considered ambiguous when it is capable of two or more constructions, [all] of which are reasonable." *Id.* at 18, 44 Cal.Rptr.2d 370, 900 P.2d 619.

◼ In this case, the policy unambiguously provides coverage only for Staffing. While Leasing and Staffing are related to one another, they are distinct corporations. Leasing contracted with MV Transportation, but only Staffing contracted for insurance coverage from AMPICO. The policy names Staffing as the sole named insured and does not state, suggest, or hint that Leasing was also a contemplated insured party under the policy. To read Leasing into the policy simply because Staffing and Leasing were related companies is not a reasonable construction of the policy. *See Republic Indem. Co. of Am. v. Schofield*, 47 Cal.App.4th 220, 227, 54 Cal.Rptr.2d 637 (1996) (finding that former officers and directors of a company were not covered under the policy where only the company was the named insured); *Seretti v. Superior Nat. Ins. Co.*, 71 Cal.App.4th 920, 929–30, 84 Cal.Rptr.2d 315 (1999) (finding that shareholders in a close corporation were not covered under an insurance policy where only the corporation was the named insured). Nor is it the construction MV Transportation and Staffing apparently placed on it; as explained in the following section, MV Transportation/Leasing employees were not included in the employee counts provided by Staffing to AMPICO and, therefore, the premium charged to Staffing never reflected MV Transportation/Leasing employees.

◼ MV Transportation offers several alternative theories to support its breach of contract claim against AMPICO. First, MV Transportation argues that it is a third party beneficiary of the policy and is entitled to coverage on this theory. (MV Transportation Mot. at 13.) However, MV Transportation can become a third party beneficiary of a contract only if AMPICO understood that Staffing had the intent to benefit MV Transportation. *Witkin, Summary of California Law, Contracts* ¶ 656. "[I]t is not necessary that the contract identify or refer to the third party by name; it is sufficient if it can be shown that the claimant is of a class of persons for whose benefit it was made." *Marina Tenants Ass'n v. Deauville Marina Dev. Co.*, 181 Cal.App.3d 122, 128–29, 226 Cal. Rptr. 321 (1986). But, the contract must also be "expressly for the benefit of the third party" such that a "mere incidental beneficiary cannot enforce it." *Witkin, Summary of California Law, Contracts* ¶ 657.

---

**3.** On January 5, 2005, the bankruptcy court modified the stay to permit AMPICO and Wachovia to make these motions. (Consent Order at 2–3.)

**4.** All of the relevant agreements contain different governing law provisions. However, the parties have agreed to the application of California law. (AMPICO Mot. at 16–17; Wachovia Mot. at 9; MV Transportation Mot. at 3.)

■ MV Transportation asserts that because AMPICO knew that Staffing was an employee leasing company operating under a variety of business names, MV Transportation was a contemplated beneficiary under the policy. (MV Transportation Opp'n at 5–7.) This knowledge is not sufficient, however, because there is no evidence that AMPICO was aware of either Leasing or its employee leasing clients. Even if AMPICO should have anticipated that Staffing's employee leasing clients would be potential third party beneficiaries of the policy, AMPICO need not have anticipated coverage for employees or clients of Leasing, a company with which it had no relationship. Therefore, MV Transportation is not a third party beneficiary of the policy. *See Murphy v. Allstate Ins. Co.*, 17 Cal.3d 937, 944, 132 Cal.Rptr. 424, 553 P.2d 584 (1976) ("Permitting a third party to enforce a covenant made solely to benefit others would lead to the anomaly of granting him a bonus after his receiving all intended benefit.").

■ In the alternative, MV Transportation argues that Wachovia, as AMPICO's authorized agent, issued certificates of insurance that amended the policy to provide coverage for MV Transportation. (MV Transportation Opp'n at 7.) AMPICO disputes that Wachovia was its agent, insisting that Wachovia was simply its broker. (AMPICO Reply at 3–5.) While agents are authorized to bind insurers, brokers are not. Croskey, et al., *Cal. Practice Guide: Insurance Litigation*, ¶ 2:32.

■ MV Transportation submits a security agreement to show that Wachovia acted as AMPICO's agent with respect to the policy. The security agreement provides that Wachovia was given "binding authority" as described in "specific program manuals" published by AMPICO or as provided in a "specific policy proposal." (Ginalski Decl. Ex. A.) However, MV Transportation does not provide a policy proposal or manual to which the security agreement could refer. Whether the security agreement has any application to the policy at issue here is left entirely uncertain because the agreement does not specifically refer to Staffing or the policy. AMPICO also presents evidence showing that the Wachovia and AMPICO representatives involved in the policy were not aware of a security agreement. (AMPICO Reply at 4; Harrison Decl. Exs. A, B.) Finally, at oral argument, AMPICO explained that the security agreement provided by MV Transportation was written for a middle market account and not for a large account such as the one at issue here. Without further evidence, MV Transportation has not created a genuine issue of fact regarding its authorized agency theory.

Finally, MV Transportation indicates, but does not expressly argue, that Wachovia acted as AMPICO's ostensible agent. In this case, much of the ostensible agency analysis turns on the issuance of certain certificates of insurance. Certificates of insurance show that an insurance policy is in place for a particular insured. It appears that some of MV Transportation's clients requested certificates of insurance as proof that MV Transportation had workers' compensation insurance for its workers. The parties have submitted numerous copies of these certificates in support of their respective legal arguments. (Kind Decl. Exs. B, C, & D; 12/15/2004 Ginalski Decl. Ex. B.)

However, there is a dispute over the origin and authenticity of some of the certificates of insurance. Specifically, Wachovia presents exhaustive evidence showing that it did not issue those certificates listing both Staffing and Leasing as the named insured. (Kind Decl. ¶¶ 10–12.) MV Transportation fails to controvert this evidence or demonstrate whether other

parties to the litigation could have issued the certificates. Therefore, these certificates do little good since MV Transportation offers no evidence that they were issued by Wachovia.

As to the other certificates provided, Wachovia does not dispute that it issued them. (*Id.* ¶ 9.) These Wachovia-issued certificates only list Staffing as the named insured. (*Id.* Exs. B & C.) However, they also name MV Transportation in the box used to list "description of operations/locations/vehicles/exclusions added by endorsement/special provisions." (*Id.*) The description in that section states: "For Employees leased to but not subcontractors of: MV Transportation" or "MV Transportation as alternate employer." (*Id.*) In addition to the certificates of insurance, three alternate employer endorsements are in evidence. (*Id.* Ex B; 12/15/2004 Ginalski Decl. Ex. B.) Only one of these endorsements is notable; it appears to amend the policy to extend coverage to MV Transportation as an alternate employer. (12/15/2004 Ginalski Decl. Ex. B.) This endorsement, issued by Wachovia, was effective as of November 27, 2002, almost four months after the policy was issued. (Id.)

Wachovia's certificates or endorsements may have the effect of amending the policy if they were issued by Wachovia as AMPICO's ostensible agent, even if Wachovia was not authorized to do so. *See Preis v. Am. Indemnity Co.,* 220 Cal.App.3d 752, 762, 269 Cal.Rptr. 617 (1990) (finding that where broker issued certificates mistakenly listing plaintiff as the insured, a question of fact arose as to whether the insurer knew or should have known that the broker was holding himself out as an agent); *Am. Cas. Co. of Reading, Pa. v. Krieger,* 181 F.3d 1113, 1122 (9th Cir.1999) (finding that question of whether broker was ostensible agent with power to bind the insurer by issuing certificates of insurance mistakenly reflecting coverage for the plaintiff was a triable issue of fact).

■ In California, ostensible agency is defined by statute. *See* Cal. Civ.Code §§ 2300, et seq. The party asserting the existence of agency must prove that (1) it relied on the agent with a reasonable belief in the agent's authority; (2) its belief was generated by the principal's act or omission; and (3) its reliance on the agent's apparent authority was not negligent. *Mejia v. Community Hospital of San Bernardino,* 99 Cal.App.4th 1448, 1457, 122 Cal.Rptr.2d 233 (2002).

■ Here, MV Transportation has not shown that it relied on the certificates or endorsements. MV Transportation's general counsel and workers' compensation administrator both testified that they never requested a certificate of insurance from Wachovia or AMPICO. (Biard Dep. at 95; Harris Dep. at 48.) Further, they could not recall when, if, or how they received certificates of insurance from Wachovia or any other party. (*Id.*)

Although it appears that MV Transportation received copies of certificates issued to its clients, there is no evidence of when and how those certificates were received. Furthermore, even if the certificates were received by MV Transportation between August 2002 and March 2003, MV Transportation has not shown that those certificates were reviewed much less relied upon. (*See* Harris Dep. at 99.) Moreover, MV Transportation does not claim that it thought it became insured by way of the November 2002 endorsement issued months after the policy went into effect. This would be contrary to its theory of the case.

From the evidence presented, there is no triable issue of fact as to whether MV Transportation relied to its detriment on the certificates of insurance and endorse-

ments. Therefore, MV Transportation cannot show that Wachovia acted with apparent authority to amend the policy to provide coverage. *See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.,* 213 F.3d 474, 480 (9th Cir.2000) (holding that while ostensible agency is generally a question of fact, if only one conclusion can be drawn from the evidence presented, the issue may be decided on summary judgment).

For the reasons described above, AMPICO's motion for summary judgment on MV Transportation's breach of contract claim is GRANTED.

### III. *Unjust Enrichment*

■ AMPICO also moves for summary judgment on MV Transportation's unjust enrichment claim. In order to show unjust enrichment, MV Transportation must demonstrate that AMPICO received a benefit and unjustly retained that benefit at its expense. *Lectrodryer v. Seoulbank,* 77 Cal.App.4th 723, 726, 91 Cal.Rptr.2d 881 (2000). MV Transportation has failed to show that AMPICO was unjustly enriched by not covering its workers' compensation claims. According to MV Transportation's own chief financial officer, Gary Lamont Richardson, MV Transportation continued to generate its employees' payroll checks out of its own account even though its agreement with Leasing provided otherwise. (AMPICO Mot. Ex. G.) As a result, there is no evidence that MV Transportation's payroll was ever reflected in Staffing's financial records. Therefore, AMPICO never factored MV Transportation's employees into the premium that it charged Staffing and was never unjustly enriched at MV Transportation's expense.

AMPICO's motion for summary judgment on this claim is GRANTED.[5]

### IV. *Negligent Procurement of Insurance*

■ Wachovia moves for summary judgment on MV Transportation's negligent procurement of insurance claim. An insurance agent that promises to obtain insurance will be liable if it negligently fails to do so. *Westrick v. State Farm Ins.,* 137 Cal.App.3d 685, 691–92, 187 Cal. Rptr. 214 (1982). This liability extends to foreseeable third party beneficiaries of the policy. "[T]he duty of the broker ... incurred in the procurement ... of an insurance policy, runs not only to those who contracted for the insurance policy but also runs directly to the class of potential victims of the insured." *Nowlon v. Koram Ins. Center, Inc.,* 1 Cal.App.4th 1437, 1447, 2 Cal.Rptr.2d 683 (1991) (citations and quotations omitted); *see also Proulx & Co. v. Crest–Liners, Inc.,* 98 Cal.App.4th 182, 196–99, 119 Cal.Rptr.2d 442 (2002) (finding that contractor could potentially recover against subcontractor's broker for negligently failing to add contractor as an additional insured under the subcontractor's insurance policy). If Staffing requested coverage for both Staffing and Leasing, MV Transportation could have been a foreseeable beneficiary of the policy.

MV Transportation raises a genuine issue of fact regarding Wachovia's negligence. Wachovia claims that it was never asked to procure coverage for Leasing. (Wachovia Mot. at 12.) It submits a declaration from Robert Cantrell, the broker for Wachovia who worked on Staffing's account, who claims that prior to the institution of this litigation, he never heard of

---

**5.** In its notice on the current motion, MV Transportation claims to have moved on its unjust enrichment claim against AMPICO. However, any discussion of that claim is absent in its motion and reply brief. Therefore, to the extent MV Transportation moves for summary judgment on its unjust enrichment claim against AMPICO, that motion is DENIED.

Leasing. (Cantrell Decl. ¶ 9.) However, MV Transportation submits evidence showing that Wachovia was asked to procure coverage for Leasing. Barry Sinins, the chief executive officer of Staffing and Leasing, maintains that he informed Wachovia of the existence of both Leasing and Staffing. (Sinins Decl. ¶ 7.) He also asserts that he requested "replacement coverage" for another existing policy, one which apparently covered both companies. (*Id.* ¶¶ 3, 6, 7, 9, Ex. A.) In spite of Cantrell's declaration to the contrary, the statements by Sinins indicate that he requested coverage for Leasing.

Because the parties have provided directly conflicting evidence as to whether Staffing ever asked Wachovia to obtain insurance for Leasing, it is not possible to determine whether MV Transportation was a foreseeable victim of any failure to procure the alleged requested insurance. Accordingly, Wachovia's motion on MV Transportation's negligent procurement of insurance claim is DENIED.[6]

## V. Negligent Misrepresentation

■ Wachovia also moves for summary judgment on MV Transportation's claim of negligent misrepresentation. MV Transportation alleges that Wachovia provided certificates of insurance that misrepresented MV Transportation's insurance coverage. (MV Transportation Opp'n at 12.) In order to show negligent misrepresentation, MV Transportation must prove that Wachovia made a

misrepresentation of a past or existing material fact, without reasonable ground for believing it to be true, and with intent to induce another's reliance on the fact misrepresented; ignorance of the

truth and justifiable reliance on the misrepresentation by the party to whom it was directed; and resulting damage. *Home Budget Loans, Inc. v. Jacoby & Meyers Law Offices,* 207 Cal.App.3d 1277, 1285, 255 Cal.Rptr. 483 (1989).

As discussed above, MV Transportation has not provided evidence that it relied on the certificates of insurance issued by Wachovia between August 2002 and March 2003. Wachovia's motion for summary judgment on this claim is GRANTED.

## VI. Duty to Defend

■ AMPICO and MV Transportation make cross-motions for summary judgment on MV Transportation's duty to defend claim against AMPICO. In order to show that an insurer has a duty to defend, the insured must prove a "potential for coverage." *Montrose Chem. Corp. v. Superior Court,* 6 Cal.4th 287, 300, 24 Cal. Rptr.2d 467, 861 P.2d 1153 (1993). However, the insurer may defeat an action seeking a duty to defend if it shows "the absence of any such potential." *Id.* For the reasons supporting its breach of contract claim, MV Transportation argues that it is potentially insured under the policy and owed coverage. (MV Transportation Mot. at 7.) However, as discussed above, the policy unambiguously provides coverage for Staffing, not Leasing. Furthermore, MV Transportation was not a third party beneficiary of the policy, and it has failed to show that the policy was amended through Wachovia's alleged actual or ostensible agency.

■ MV Transportation offers alternative legal theories to argue that AMPICO has a duty to defend. None of these theo-

---

**6.** Wachovia asserts that as a result of a May 21, 2004 order granting AMPICO's request to strike the negligence claim against it, the same claim against Wachovia should also be struck. (Wachovia Mot. at 8.) MV Transpor-

tation's claim of negligence against Wachovia survived AMPICO's separate motion to strike; therefore, Wachovia's current motion to strike is DENIED.

ries is persuasive. First, according to the evidence submitted, the policy information page reference to "ALL OTHER" instead of "corporation" is not fairly understood to indicate that all entities related to Staffing are insured. The language is a reference to Staffing's corporate form, which was replaced with the word "corporation" on December 9, 2002. (Knoebel Decl. ¶ 9.) Second, MV Transportation cites California Insurance Code §§ 11657 and 11658, which require certain filings and other requirements in order to limit the coverage of a workers' compensation policy in California. (MV Transportation Mot. at 5.) However, there is no support for the proposition that these provisions broaden the scope of insured entities rather than the types of covered claims.

■■■ MV Transportation also relies on AMPICO's allegations in a separate proceeding and argues that AMPICO, through its verified complaint in that matter, has admitted that it has a duty to cover MV Transportation or is judicially estopped from arguing that it has no duty to cover MV Transportation. (*Id.* at 11.) However, the complaint cannot be treated as an affidavit because it was based on information and belief, and not on personal knowledge as required under *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir.1995). MV Transportation's judicial estoppel argument similarly fails. First, no court has adopted AMPICO's alleged inconsistent position. *Interstate Fire & Cas. Co. v. Underwriters at Lloyd's, London*, 139 F.3d 1234, 1239 (9th Cir.1998) (finding that "judicial estoppel applies only if the court has relied on the party's previously inconsistent statement"). Even under the minority approach to determining judicial estoppel—whether the party is playing fast and loose with the judicial system—MV Transportation has failed to show that AMPICO engaged in such behavior.

To require AMPICO to defend in this case would extend the duty to defend beyond the nature of the risk contemplated under the policy. Therefore, MV Transportation's motion is DENIED, and AMPICO's motion is GRANTED.

VII.

For the reasons stated above, AMPICO's motion for summary judgment as to all claims against it is GRANTED. Wachovia's motion for summary judgment as to MV Transportation's negligent procurement of insurance claim is DENIED. Wachovia's motion as to MV Transportation's negligent misrepresentation claim is GRANTED. MV Transportation's motion as to AMPICO's duty to defend is DENIED. IT IS SO ORDERED.