Filed 4/8/21  Sproul v. Rothermel CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DAVID C. SPROUL et al., | D076343 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2017-00021885-PR-TR-CTL) |
| CRAIG A. ROTHERMEL, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Julia Craig Kelety, Judge.  Affirmed.

David C. Sproul, in pro. per.; Sherri Sproul Brunzell, in pro. per.; and Kristen Kelly Lawson, in pro. per., for Plaintiffs and Appellants.

Klinedinst, Heather L. Rosing, Samuel B. Strohbehn, and Robert M. Shaughnessy, for Defendant and Respondent.

Craig A. Rothermel briefly served as a successor trustee under the Fred C. Sproul, Sr. and Sevilla C. Sproul Living Trust dated April 14, 1979 (the Trust).  David C. Sproul (David), Kristen Kelly Lawson (Lawson), and Sherri Sproul Brunzell (Brunzell (David, Lawson, and Brunzell collectively Appellants) sued Rothermel, among other defendants, for breach of fiduciary

duty and to obtain an accounting of the Trust. Rothermel successfully brought a motion for summary judgment, and Appellants, proceeding in propria persona, appeal the ensuing judgment in his favor.

We agree with the superior court that there exist no genuine issues of material fact as to any of the issues raised by Appellants. Therefore, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Fred C. Sproul, Sr. (Fred) and Sevilla C. Sproul settled the Trust on April 14, 1979. Fred and daughter Beverly Kelly, were appointed co-trustees of the Trust at that time. In an amendment of the Trust dated November 26, 1985, Fred, acting as the surviving settlor, removed Beverly as a cotrustee of the survivor's Trust and designated himself and attorney Paul Robinson as co-trustees. Fred passed away on April 30, 1989. According to Appellants, Fred's son Elmer was to serve as a co-trustee with Robinson upon Fred's death. Instead, Robinson allegedly appointed Beverly as his co-trustee. Robinson subsequently passed away on August 22, 2001, after which Beverly allegedly assumed control as sole trustee of the Trust until her death in 2017. Nearly sixteen years before her death, on September 11, 2001, Beverly named Rothermel to act as a successor trustee upon her death.

While Beverly was acting as the sole trustee of the Trust, she hired realtor and real estate broker Terrie Hertweck to sell various properties in and around Albuquerque, New Mexico. Relevant to the instant action, in mid-2016, Beverly asked Hertweck to sell real property owned by the Trust and leased by an operating Taco Bell franchisee. The Taco Bell property had several prior exercised options to extend the lease, and, by 2016, one 5-year option remained.

2

Before listing the Taco Bell property for sale, Beverly believed that the franchisee had exercised its final option ahead of time, which would mean that it was committed to leasing the Taco Bell through at least 2025. The exercise of the option to lease through 2025 was calculated into the value of the Taco Bell property because the value of investment property increases with a longer lease term. Under this understanding, Hertweck initially recommended to Beverly that she list the Taco Bell property for $1 million. Hertweck believed that this number was above comparable sales and that the property would likely sell for less than this amount. However, Hertweck believed it was advantageous to list it for this amount in case the franchisee wanted to purchase the property.

Despite Hertweck's recommendation, Beverly insisted that the Taco Bell property be listed for a price above its estimated value. Therefore, at Beverly's insistence, the Taco Bell property was first listed for $1.45 million in June of 2016. The franchisee made a verbal offer on the property that was well below market value and below the final $835,000 sales price. Beverly declined the franchisee's offer, but agreed to drop the asking price to $1.14 million, which was still above comparable sales. The Taco Bell property remained unsold for nearly six months.

Other than the actual buyer's offer and the franchisee's below market offer, the Taco Bell property received only one other offer. That offer was part of a 1031 exchange made by Perry Mann as an investment. To perform under the 1031 exchange, Mann needed to list several potential properties that could be purchased. To meet that need, Mann prepared a letter of intent to purchase the Taco Bell property at the existing list price of $1.14 million. But Mann made no attempt to actually negotiate sale terms for the Taco Bell property and, instead, canceled his letter of intent one week later.

Regarding the sale of the Taco Bell property, Beverly and the buyers initially negotiated a sales price of $850,000. Nevertheless during escrow, the parties to the agreement discovered that, contrary to Beverly's earlier understanding, the franchisee's lease option terminated in 2020 rather than 2025. The lack of a lease beyond 2020 reduced the value of the Taco Bell property. Because the purchase price was negotiated based on the incorrect information that Beverly provided, both Hertweck and Beverly feared the buyers had grounds to bring a lawsuit and cancel the purchase agreement. Consequently, Beverly agreed to reduce the sales price by $15,000, to $835,000, to account for the correct lease term. Hertweck believed the final sales price of $835,000 was a fair price for the Taco Bell property.

Beverly entered into the purchase agreement for the Taco Bell property sometime around mid to late December of 2016, before her death in January of 2017. She passed away on January 5, 2017, and Rothermel became the successor trustee of the Trust. At that time, the Taco Bell property was under contract to be sold and in escrow.

In mid-February, after Hertweck informed Rothermel that the sale price of $835,000 was a very good price, was beneficial to the Trust, and was likely the best offer the Trust would receive for the Taco Bell property, Rothermel signed an addendum reflecting the agreed price.

In early February of 2017, Rothermel received a call from Brunzell's attorney. Brunzell is the daughter of Fred Jr. and Alberta Sproul. Brunzell's attorney demanded that Rothermel immediately cancel the sale of the Taco Bell property. In response to this demand, Rothermel, acting in his capacity as trustee of the Trust, contacted attorney Kimberly McGhee and sought advice regarding the Taco Bell property's sale contract and whether he should cancel or proceed with the sale. Like Rothermel, McGhee received a

4

letter from Brunzell in February of 2017, demanding the immediate cancelation of the Taco Bell property sale. The escrow was set to close at the end of February.

Per McGhee's advice, Rothermel sought counsel from New Mexico real estate attorneys. Rothermel engaged Miller Stratvert, a law firm in New Mexico, for the purpose of reviewing the sale of the Taco Bell property. Attorneys Kirk Allen and Stephen Waller of Miller Stratvert, informed Rothermel and McGhee that canceling the sale of the Taco Bell property, or even postponing it, would likely cause significant economic harm to the Trust. Allen and Waller opined that the buyers could both demand specific performance and seek liquidated damages under the purchase agreement. Based on that advice, Rothermel's attorney, McGhee, concluded that it would be imprudent to cancel the sale. Moreover, based on the advice of counsel as well as the representation from Hertweck that the purchase price was fair, Rothermel declined Brunzell's demand to forego the sale and allowed escrow to close on the Taco Bell property at the end of February 2017.

Appellants then brought suit against Rothermel, among others, alleging causes of action for breach of fiduciary duty and accounting. After Appellants began this litigation, Rothermel ceased being the trustee of the Trust. He also provided an accounting to the new trustee Clay B. Spiegel. This accounting covered the period of January 5, 2017 to June 30, 2017. Rothermel prepared a second accounting covering July 1 to August 15, 2017.[1] Rothermel also provided his entire Trust file to Spiegel.

On August 27, 2018, Appellants filed the second amended petition, which is the operative pleading in the instant action. Although that pleading included allegations against a variety of individuals, for purposes of this

---

[1] Apparently, the court ordered this second accounting.

appeal, we focus on the allegations against Rothermel. The petition alleged that Rothermel served as an accountant for Fred Sproul, Sr., Beverly, the estate of Sevilla Sproul, and for the Trust "since at least the late 1980s." During that time, Rothermel prepared tax returns for Sevilla's estate, Fred, Sr., Beverly, and the Trust. Further, according to the allegations in the second amended petition, Rothermel acted as the successor trustee of the Trust from January 5, 2017 to August 15, 2017. He did not begin serving in this capacity until Beverly passed away.

Rothermel filed a demurrer to the second amended petition. Rothermel argued that the Appellants' request for a surcharge was too vague as to him; the second amended petition did not state how Rothermel breached his fiduciary duties or how Appellants were damaged by the alleged breach; and he had already provided an accounting so the request for an accounting was moot.

The court overruled Rothermel's demurrer, explaining in detail:[2]

> "Rothermel's demurrer to the request for an accounting is overruled because in looking at the four corners of the [second amended petition] and matters of which this court may take judicial notice, the court is unable to reach the conclusion that this request is moot. Indeed, the court's file does not contain an accounting by Rothermel nor has the court been asked to take judicial notice of such a document.

> "Rothermel's demurrer to the cause of action for breach of fiduciary duties is likewise overruled as the court finds that [Appellants] have sufficiently pled a breach of fiduciary by Rothermel. Specifically, in paragraphs 32 and 33 of the

---

[2] Although this instant matter involves a judgment following a successful motion for summary judgment, we include the superior court's detailed explanation of its overruling of the demurrer because Appellants maintain the court's ruling on demurrer somehow contradicts its granting of the motion for summary judgment. We will address this issue, *post*.

6

[second amended petition] [Appellants] acknowledge that the transaction for the sale of the Taco Bell restaurant was commenced during Beverly's reign as trustee, but go on to state that '[t]he final sale price which was accepted by successor trustee, Rothermel, was $835,000 which was far below fair market value resulting in an unnecessary loss to the Trust.' [Appellants] also allege that '[p]rior to the close of escrow, [Appellants] objected to the sale because they had an alternative prospective buyer who verbally offered over one million . . . .' In paragraph 58 [Appellants] allege that 'Rothermel negligently failed to make reasonable inquiry into the real estate transaction involving Church's Chicken and the Taco Bell Restaurant,' thereby damaging the Trust. For purposes of a demurrer, these allegations are sufficient. Lastly, . . . [Appellants'] request[ ] for a surcharge is remedial in nature and does not constitute an independent cause of action. However, as stated above, a demurrer does not lie to a type of damage or remedy. . . . Therefore, the survival of this request for relief is based on [Appellants'] ability to allege a valid legal basis for Rothermel's liability such that [Appellants] are entitled to relief. As stated above, the court finds that [Appellants'] have sufficiently alleged such a basis."

Rothermel subsequently moved for summary judgment. In doing so, he advanced three primary arguments. First, Appellants could not prove a breach of fiduciary duty against him because they could not show that any of Rothermel's actions caused them harm. Second, Appellants could not prove their claim of breach of fiduciary duty because they could not show Rothermel breached the standard of care. Third, Appellants could not maintain a demand for accounting because Rothermel had already provided a full accounting along with his Trust files.

Appellants, proceeding in propria persona, filed an opposition and supporting evidence. Rothermel filed a reply, which included objections to evidence.

After considering the papers and entertaining oral argument, the court granted Rothermel's motion for summary judgment.

Appellants timely appealed the ensuing judgment.

DISCUSSION

A judgment or order is presumed correct, and reversible error must be affirmatively shown. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "Though summary judgment review is de novo, review is limited to issues adequately raised and supported in the appellant's brief." (*Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125.)

On appeal, a party challenging an order has the burden to show error by making coherent legal arguments, supported by authority, or the claims will be deemed forfeited. (*Kaufman v. Goldman* (2011) 195 Cal.App.4th 734, 743 ["Every argument presented by an appellant must be supported by both coherent argument and pertinent legal authority."]; *Wright v. City of L.A.* (2001) 93 Cal.App.4th 683, 689 [asserted grounds for appeal that "merely complain of error without presenting a coherent legal argument are deemed abandoned and unworthy of discussion"].) Self-represented parties are held to the same standards and procedural rules as parties represented by counsel. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985; *Doran v. Dreyer* (1956) 143 Cal.App.2d 289, 290.)

An appellant's brief should "point out portions of the record that support the position taken on appeal. The appellate court is not required to search the record on its own seeking error." (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768; see *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286-287 ["[T]o demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record"]; Cal. Rules of Court, rule 8.204(a)(1)(C).)

"Appellate briefs must provide argument and legal authority for the positions taken. 'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.' " (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862 (*Nelson*); see *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146 (*Malibu Hillbillies*) [" 'In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.' "].)) "We are not bound to develop appellants' argument for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 (*Falcone*); see *Malibu Hillbillies*, at p. 146.)

Additionally, as a general rule, we will consider only the points raised in the trial court. (*Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591-592 ["arguments raised for the first time on appeal are generally deemed forfeited"].) Although this court can use its discretion to consider an argument for the first time on appeal, the argument must involve a pure question of law determinable from uncontroverted facts. (*Phillips v. TLC Plumbing, Inc.* (2009) 172 Cal.App.4th 1133, 1141.)

We have read and reread Appellants' briefs and find the briefs lacking in several critical respects. Appellants cite to some legal authority, most of it out of state or federal case law, and elsewhere provide some record citations, but they fail to tie the two together with coherent legal arguments. Moreover, Appellants reference claims against other defendants and previous trustees that have no bearing on the issues before us. Further, they make new allegations against Rothermel that neither appear in the second amended petition nor are supported by evidence. That said, we have

9

considered Appellants' briefs and have carefully reviewed the record. Accordingly, we will address the merits of the issues that we can ascertain.

## I

## SUMMARY JUDGMENT

### A. Standard of Review

The standard of review for an order granting a motion for summary judgment is de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*).)

In performing our independent review, we apply the same three-step process as the trial court. "Because summary judgment is defined by the material allegations in the pleadings, we first look to the pleadings to identify the elements of the causes of action for which relief is sought." (*Baptist v. Robinson* (2006) 143 Cal.App.4th 151, 159 (*Baptist*).)

"We then examine the moving party's motion, including the evidence offered in support of the motion." (*Baptist*, *supra*, 143 Cal.App.4th at p. 159.) A defendant moving for summary judgment has the initial burden of showing that a cause of action lacks merit because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action. (Code Civ. Proc.,[3] § 437c, subd. (o); *Aguilar*, *supra*, 25 Cal.4th at p. 850.)

If the defendant fails to make this initial showing, it is unnecessary to examine the plaintiff's opposing evidence, and the motion must be denied. However, if the moving papers make a prima facie showing that justifies a judgment in the defendant's favor, the burden shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact.

---

[3] Statutory references are to the Code of Civil Procedure unless otherwise specified.

10

(§ 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at p. 849.)  In determining whether the parties have met their respective burdens, "the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citations], and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party." (*Aguilar*, *supra*, 25 Cal.4th at p. 843.)  "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id*. at p. 850, fn. omitted.)  Thus, a party "cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact.  [Citation.]" (*LaChapelle v. Toyota Motor Credit Corp.* (2002) 102 Cal.App.4th 977, 981.)

### B.  Appellants' Contentions That Do Not Involve the Substance of the Summary Judgment Motion

Appellants raise two challenges to the court's granting of Rothermel's motion for summary judgment that do not involve an analysis of the motion itself.  We shall address these claims before engaging in the more traditional three step process.

Appellants insist that the superior court erred in granting summary judgment because it improperly limited discovery.  Initially, it appears Appellants are arguing that the court abused its discretion by failing to continue the summary judgment hearing either pursuant to subdivision (h) of section 437c or by exercising its discretion for good cause.  This inference is supported by the record.  During the hearing on the summary judgment motion, David asked the court "to go ahead and extend this out a little bit farther."  The court responded, "[I]f that's a formal request for continuance, I'm going to deny the request for continuance.  I can't find good cause[.]"

11

Later during the summary judgment hearing, Brunzell, in arguing that summary judgment should not be granted, stated, "Summary judgment ordinarily is proper after the plaintiff has been given adequate time for discovery[.]" In response, the court noted that the litigation had been pending over two years, and it was not sure why Brunzell believed she did not have sufficient time to conduct discovery. The court further noted that Brunzell had been represented by counsel who was "well familiar with the discovery process" and that the court was "not able to cure any discovery problems that [Brunzell] [had] been having."

Continuance of a summary judgment hearing is required "[i]f it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication, or both, that facts essential to justify opposition may exist but cannot, for reasons stated, be presented." (§ 437c, subd. (h).) A party seeking to continue the motion to obtain necessary discovery may also file an ex parte application at any time on or before the date that the opposition is due. (§ 437c, subd. (h).)

Here, Appellants do not point to any declaration or argument made below explaining what additional discovery was needed. Nor do they make any such explanation in their opening brief. As such, they have waived this issue on appeal. (See *Malibu Hillbillies*, *supra*, 36 Cal.App.5th at p. 146; *Nelson*, *supra*, 172 Cal.App.4th at p. 862; *Falcone*, *supra*, 164 Cal.App.4th at p. 830.)

"When a continuance of a summary judgment motion is not mandatory, because of a failure to meet the requirements of [section 437c, subdivision (h)], the court must determine whether the party requesting the continuance has nonetheless established good cause therefor." (*Lerma v. County of Orange* (2004) 120 Cal.App.4th 709, 716; *Hamilton v. Orange*

12

*County Sheriff's Dept.* (2017) 8 Cal.App.5th 759, 765 [granting of continuance under discretionary standard "requires a showing of good cause"].) Courts consider various factors when deciding whether good cause exists to continue a summary judgment hearing to allow additional discovery. (*Hamilton*, at p. 765.) Those factors include whether the request for a continuance could have been made earlier and " 'whether the evidence sought is truly essential to the motion.' " (*Ibid.*) We review for abuse of discretion the trial court's denial of a party's request for a continuance when the request was not supported by an affidavit. (*Cooksey v. Alexak*is (2004) 123 Cal.App.4th 246, 254.)

Here, Appellants have again failed to provide any authority or cogent legal argument that good cause supported a continuance of the hearing on the summary judgment motion. Thus, they have waived this issue as well. (See *Malibu Hillbillies, supra*, 36 Cal.App.5th at p. 146; *Nelson, supra*, 172 Cal.App.4th at p. 862; *Falcone, supra*, 164 Cal.App.4th at p. 830.)

Although Appellants have provided no authority or argument to support their claim they needed further discovery to oppose the motion for summary judgment, they maintain their former attorney stipulated to a limitation of discovery without their consent. Based on this act by their former attorney, they ask for relief under section 473, claiming their attorney acted without authorization.[4] However, putting aside the fact that

---

[4] Section 473, subdivision (b) provides: "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. Application for this relief shall be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted, and shall be made within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was

13

Appellants' argument is again unsupported by adequate citation to the record or any indication that they properly sought relief under section 473, subdivision (b) below, our independent review of the record has not disclosed any order limiting discovery in the instant matter. Instead, it appears the order that has drawn Appellants' ire only continued the trial date and maintained the same discovery cut-off date but allowed the parties to seek an extension of discovery for "particular discovery items" under certain circumstances. In other words, there is nothing in the record that supports

taken. However, in the case of a judgment, dismissal, order, or other proceeding determining the ownership or right to possession of real or personal property, without extending the six-month period, when a notice in writing is personally served within the State of California both upon the party against whom the judgment, dismissal, order, or other proceeding has been taken, and upon his or her attorney of record, if any, notifying that party and his or her attorney of record, if any, that the order, judgment, dismissal, or other proceeding was taken against him or her and that any rights the party has to apply for relief under the provisions of Section 473 of the Code of Civil Procedure shall expire 90 days after service of the notice, then the application shall be made within 90 days after service of the notice upon the defaulting party or his or her attorney of record, if any, whichever service shall be later. No affidavit or declaration of merits shall be required of the moving party. Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect. The court shall, whenever relief is granted based on an attorney's affidavit of fault, direct the attorney to pay reasonable compensatory legal fees and costs to opposing counsel or parties. However, this section shall not lengthen the time within which an action shall be brought to trial pursuant to Section 583.310."

14

Appellants' claim that they are entitled to some type of relief under section 473, subdivision (b).

In addition, Appellants argue that the court's ruling on demurrer somehow prohibited the court from granting summary judgment. Specifically, they claim the granting of the summary judgment motion somehow "prevented [them] from showing a valid factual and legal basis for [Appellants'] entitled relief." To support their argument, Appellants quote from a portion of the superior court's order overruling Rothermel's demurrer to the second amended petition. Appellants misunderstand the court's ruling on demurrer.

In the portion of the demurrer Appellants quote, the court is addressing Rothermel's challenge to the remedy of a surcharge. The court noted that a surcharge is not a cause of action but a remedy. As such, the court found that "a demurrer does not lie to a type of damage or remedy." The court then continued to state that "the survival of this request for relief is based on [Appellants'] ability to allege a legal basis for Rothermel's liability such that [Appellants] are entitled to relief." The court concluded that Appellants had "sufficiently alleged such a basis."

A demurrer merely tests the legal sufficiency of a complaint. (*Holiday Matinee, Inc. v. Rambus, Inc.* (2004) 118 Cal.App.4th 1413, 1420.) Thus, the court's overruling of the demurrer supports the proposition that the allegations in the second amended petition stated a valid cause of action against Rothermel. However, that ruling did not insulate the second amended complaint from a summary judgment motion. Indeed, when faced with the summary judgment motion, Appellants had their opportunity to

15

present evidence to support their claim that they are entitled to relief. (See *Aguilar*, *supra*, 25 Cal.4th at p. 849.) As such, the court's order on demurrer did not prohibit the court from granting Rothermel's motion for summary judgment.

Having concluded Appellants' two precursory challenges to the summary judgment motion are without merit, we next turn to the substance of the summary judgment motion.

### C. Appellants' Theories of Liability

The complaint frames the issues for summary judgment.[5] (See *B.L.M. v. Sabo & Deitsch* (1997) 55 Cal.App.4th 823, 834.)

The second amended petition contains two causes of action directed at Rothermel. The first is breach of fiduciary duty, and the second is a request for an accounting.

"The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." (*Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1086.). In the second amended petition, Appellants allege Rothermel breached his fiduciary duty "by failing and refusing to: (1) 'control and preserve trust property', (2) 'keep beneficiaries reasonably informed', (3) 'exercise [his] discretionary powers reasonably', and (4) account to the beneficiaries[.]" Specifically, based on the allegations in the second amended petition, Appellants claimed Rothermel breached his fiduciary duties when he "negligently failed to make reasonable inquiry into the real

---

[5] This general principle is particularly significant here as Appellants' arguments in their briefs often stray from the allegations in the second amended complaint and are devoid of any evidentiary support.

16

estate transaction involving the Taco Bell Restaurant" and "ignored and/or actively prevented the Trust beneficiaries' attempts to investigate the propriety of the sale."

The second cause of action alleged against Rothermel is a request for an accounting. An accounting is an action in equity. "An accounting cause of action is equitable in nature, and may be sought 'where . . . the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable.' [Citation.] [¶] 'A suit for an accounting will not lie where it appears from the complaint that none is necessary or that there is an adequate remedy at law. [Citations.] An accounting will not be accorded with respect to a sum that a plaintiff seeks to recover and alleges in his complaint to be a sum certain.' [Citation.]" (*Civic Western Corp. v. Zila Industries, Inc.* (1977) 66 Cal.App.3d 1, 14.) The elements of an accounting cause of action are: (1) a fiduciary relationship, (2) losses in an amount that cannot be ascertained, and (3) misconduct. (*Kritzer v. Lancaster* (1950) 96 Cal.App.2d 1, 6-7; see *Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 179.) In the second amended petition, Appellants "request that the court order [Rothermel] to account for the Trust[.]"

D. Rothermel's Burden on Summary Judgment

"As to each claim as framed by the [second amended petition], the defendant must present facts to negate an essential element or to establish a defense. Only then will the burden shift to the plaintiff to demonstrate the existence of a triable, material issue of fact. [Citation.]" (*Ferrari v. Grand Canyon Dories* (1995) 32 Cal.App.4th 248, 252.)

A trustee need only exercise the care and judgment of an ordinarily prudent person. (*Estate of Cousins* (1896) 111 Cal. 441, 449; *In re Estate of Whitney* (1926) 78 Cal.App. 638, 645.) A mere error in judgment is not

17

sufficient to subject the trustee to punitive responsibility, nor does the law demand extraordinary care from a trustee, or make the trustee an insurer of the trust property. (*Estate of Cousins*, at p. 449.) California's Probate Code defines a general standard of care in administering a trust as the care, skill, prudence, and diligence of a prudent person acting in a like capacity, in an enterprise of like character, and with like aims. (Prob. Code § 16040; see *Saks v. Damon Raike & Co.* (1992) 7 Cal.App.4th 419, 428.)

Here, Appellants' focus on Rothermel's role in the sale of the Taco Bell property as the crux of their breach of fiduciary claim. Rothermel claims he "made a well-reasoned, well-informed, and prudent decision when he chose not to delay or breach the contract of the sale of the Taco Bell property." We agree with Rothermel that he produced sufficient evidence to satisfy his prima facia case on this issue.

In support of his motion for summary judgment, Rothermel produced the sale and purchase agreement for the Taco Bell property. Beverly, not Rothermel, signed the agreement. The original sale price was $850,000, although the final sale price was reduced to $835,000.

Rothermel also provided the comparative sales information used to establish the sale price for the Taco Bell property, indicating that with the exception of one location in Texas, the Taco Bell property had a higher sale price than the other comparable properties.

In his declaration submitted in support of his motion for summary judgment, Rothermel established the following facts: Beverly died on January 5, 2017, and, at that time, Rothermel became the successor trustee under the Trust. Before her death, Beverly had entered into a contract of the

18

sale of the Taco Bell property, which was scheduled to close on February 27, 2017. Nineteen days before the close of the sale, Brunzell's attorney contacted Rothermel demanding that he cancel the sale of the Taco Bell property.

Upon receiving the demand from Brunzell's attorney, Rothermel contacted Hertweck, the realtor Beverly had hired to sale the Taco Bell property. Hertweck informed Rothermel that the sale of the Taco Bell property was at a "very good price" and was beneficial to the Trust. Hertweck also told Rothermel that, based on comparable sales, it was unlikely that she could sell the Taco Bell property for a higher price. Hertweck also provided a declaration that echoed these facts.

In her declaration, Hertweck explained the reduction of the sale price from $850,000 to $835,000. She declared that while the Taco Bell property was in escrow, it was discovered that the tenant's current lease option terminated in 2020 rather than 2025. As such, the value of the Taco Bell property was reduced. Because the purchase price was negotiated on incorrect information, Hertweck and Beverly were concerned that the buyers would sue or seek to cancel the purchase and sale agreement. Therefore, Beverly agreed to reduce the sale price to $835,000 to reflect the actual lease situation on the property.

Rothermel also contacted Kim McGee, an attorney he hired to represent him in his role as trustee under the Trust. McGhee advised Rothermel to hire local real estate counsel in Albuquerque, New Mexico, who could advise him about whether the sale of the Taco Bell property should be canceled.

In his declaration, Rothermel additionally explained that he retained the legal services of Miller Stratvert to advise him regarding continuing the

19

sale of the Taco Bell property. Allen and Walker of Miller Stratvert, informed both McGhee and Rothermel, by telephone, that cancelling the sale of the Taco Bell property would cause significant economic harm to the Trust. Moreover, there existed a liquidated damages clause in the sales contract, which subjected the Trust to additional damages if the sale was not closed.

Based on the advice from Miller Stratvert as well as information provided by Hertweck, Rothermel, along with McGhee, decided the sale of the Taco Bell property should close.

Based on this foundation, we are satisfied that Rothermel presented evidence establishing a defense to the cause of action for breach of fiduciary duty, namely that Rothermel did not breach the standard of care and Appellants have not been damaged.

Regarding the request for accounting, we note that, in Rothermel's declaration, he represented that he provided two accountings—one for the period of January 5, 2017 through June 30, 2017 and another for the period of July 1, 2017 through August 15, 2017. These two accountings cover the entirety of Rothermel's time as trustee under the Trust and are included in the record.

Rothermel also offered the declaration of Clay Spiegel, the current successor trustee of the Trust. Spiegel attests that soon after assuming his current role, he "spoke on the phone with attorney for [Appellants], Richard Van Dyke. Also on this phone call were [Spiegel's] attorney Jason Sheinberg, as well as former trustee Craig Rothermel and his attorneys at Klinedinst P.C. [They] all agreed, including Richard Van Dyke, that Craig Rothermel would produce the Trust file to [Spiegel] directly instead of producing it to [Appellants]. [¶] Craig Rothermel then sent [Spiegel] a Trust file, which [Spiegel] received. [Spiegel] was told by Mr. Rothermel that the file was

20

complete.  [Spiegel] underst[ood] that if [he] should believe any documents [were] missing, or that [he] need[s] additional documents, [he] can contact Craig Rothermel or his attorneys."

Based on the evidence presented, Rothermel has shown that he has produced accountings covering his time as trustee thus mooting Appellants' request for an accounting.

### E.  Appellants' Burden in Proving a Triable Issue of Fact

Having concluded that Rothermel has satisfied his burden of making a prima facia case for judgment in his favor, the burden shifts to Appellants to make a prima facie showing of the existence of a triable issue of material fact. (§ 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at p. 849.)  "[T]o meet that burden, the plaintiff ' . . . shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .' " (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477.)  If Appellants present evidence demonstrating the existence of a disputed material fact, the motion must be denied.  (*Aguilar*, at p. 856.)  Here, Appellants have not carried their burden.

In the instant matter, Appellants must show a triable issue of fact as to the two causes of action they allege against Rothermel—breach of fiduciary duty and accounting.  As to the latter claim, Appellants make no cogent argument explaining why they believe a disputed material fact exists.  They do not cite to any evidence in the record.  They do not offer any legal authority to support their position.  Here, Rothermel put forth evidence that he provided the requested accounting.  Appellants do not explain what is wrong or otherwise deficient with the accountings Rothermel produced. Thus, Appellants have waived any argument as to the superior court's determination that a triable issue of material fact did not exist as to the

21

request for accounting cause of action. (See *Malibu Hillbillies*, *supra*, 36 Cal.App.5th at p. 146; *Nelson*, *supra*, 172 Cal.App.4th at p. 862; *Falcone*, *supra*, 164 Cal.App.4th at p. 830.)

Appellants' argument is no more fruitful in support of the breach of fiduciary cause of action. Appellants cite to several out-of-state cases, claiming those cases are analogous to the instant matter. Yet, this authority on which Appellants rely is of little help to their position. First, we are not bound to follow out-of-state decisions. (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 490.) Second, Appellants do not explain how these cases are analogous. Although they do discuss some of the cases in detail, they do not point to what evidence in the record before us makes the instant matter similar to the out-of-state authority. Simply telling us the cited cases are analogous is not helpful.

In addition, Appellants do not cite to evidence in the record or explain how that evidence shows a triable issue of fact. Instead, they challenge the evidence put forth by Rothermel as insufficient or tainted. For example, Appellants claim Hertweck had a conflict of interest because she was paid a commission on the sale of the Taco Bell property. They also assert the two attorneys from Miller Stratvert, retained by Rothermel to advise him on the sale of the Taco Bell property, were conflicted simply because they represented Rothermel. Despite these conflict of interest aspersions, Appellants do not otherwise take issue with the advice Hertweck and Miller Stratvert provided Rothermel. Nor did they offer any evidence casting doubt on Hertweck's opinion that the sale price of the Taco Bell property was "very good" and that it was unlikely she could sell the property for a higher price. Similarly, Appellants offer no evidence to contradict the attorneys' advice that cancelling the sale of the Taco Bell property would cause significant

economic harm to the Trust. Rather than providing evidence to create a triable issue of fact, Appellants speculate as to possible conflicts of interest. Because "[s]peculation . . . is not evidence" (*Aguilar*, *supra*, 25 Cal.4th at p. 864), Appellants' speculation cannot create a triable issue of material fact. (See *Joseph E. Di Loreto, Inc. v. O'Neill* (1991) 1 Cal.App.4th 149, 161.)

Appellants also take issue with the comparable sales offered by Rothermel in support of his motion for summary judgment. To this end, they note that the comparable sales concern properties that are not in the Albuquerque, New Mexico region, which is where the Taco Bell property is located. Therefore, they claim the comparable property sales offered by Rothermel are "irrelevant." If Appellants are trying to make an evidentiary objection, they have forfeited it by failing to object below. (See *Collin v. CalPortland Company* (2014) 228 Cal.App.4th 582, 598.) Further, Appellants have provided no evidence that calls into question whether Rothermel was properly performing his duties as a trustee in relying on the subject comparable sales. For example, Appellants did not offer their own list of comparable sales in the Albuquerque region that contradicts Rothermel's assertion that the sale of the Taco Bell property compared favorably to similar sales. Again, Appellants are offering little more than speculation to try to create a disputed issue of material fact.

Appellants also claim the court erred by failing to consider Brunzell's declaration, which they assert was timely filed. Nonetheless, Appellants do not clearly indicate in their opening brief where this declaration exists in the record. During our review of the record, we located what appears to be the subject declaration. It is not a stand-alone document, but rather, it exists in the middle of document entitled, "Notice of Lodgment and Request for Judicial Notice of Exhibits and Petitioner's Declaration in Support of

23

Opposition to Respondent's Motion for Summary Judgment or, in the alternative, Summary Adjudication." On the third page of that document, in the middle of the page, begins, what purports to be, a declaration from Brunzell. The declaration appears to be signed by Brunzell in Colorado, under "the laws of the State of Colorado." The declaration references certain exhibits that are supposed to be attached, but we were not able to locate the exhibits.[6]

Although we were able to locate in the record what we believe is the subject declaration, it is clear that the superior court did not consider the declaration, noting in its minute order that the Brunzell declaration did not seem to exist. Yet, the court's failure to consider the Brunzell declaration was not a surprise to Appellants.

In his objections to evidence filed in support of his summary judgment, Rothermel asserted the following: "[Appellants'] separate statement also references a declaration from [Appellant] Sherri Sproul Brunzell that does not appear to exist and is not included with [Appellants'] separate statement or opposition." Therefore, Appellants had ample notice that Rothermel was arguing the Brunzell declaration did not exist. There is no indication in the record that Appellants filed any additional document with the court or otherwise pointed out the existence and location of the Brunzell declaration in its opposition to the motion for summary judgment.

Further, in its tentative ruling on the motion for summary judgment, the superior court echoed Rothermel's assertion that the Brunzell declaration did not exist. Thus, Appellants knew the court also believed the Brunzell declaration was nonexistent and did not consider it as part of Appellants'

_____

[6]    Appellants have not indicated the location of these exhibits in the record.

24

opposition to the summary judgment motion. At the hearing on the summary judgment motion, the court explicitly asked David if he wanted to address the tentative ruling. David did not discuss the court's failure to consider Brunzell's declaration. Nonetheless, David did make a passing reference to the Brunzell declaration ("and in support of David Sproul's declaration, Sherry Sproul Brunzell, declaration ROA289") as part of his prepared remarks he read to the court. The court stopped David during his reading of his prepared remarks to ask him to relate the allegations he was discussing with what was contained in the second amended petition. Specifically, the court asked David to show the court what wrongful acts were attributable to Rothermel as set forth in the second amended petition. After referring the court to a portion of the operative pleading, David continued to read his prepared remarks ("Well, I've got three more pages of this to read, that I would like to become part of the record"). However, he did not mention the Brunzell declaration again.

Brunzell also appeared at the summary judgment hearing and presented argument. At the end of her argument, in which she did not discuss the court's failure to consider her declaration, the court asked Brunzell whether there was "[a]nything else with regard to the tentative ruling" that she wanted to discuss. She did not raise the issue of her declaration.

Against this backdrop, it is clear Appellants had notice before the summary judgment hearing that the court did not consider the Brunzell declaration and agreed with Rothermel that the declaration did not exist. Yet, Appellants did not address this issue with the court at the summary judgment hearing. Now, on appeal, they claim the court abused its discretion by not considering the declaration. Yet, it is not evident that the court

25

exercised discretion as Appellants' claim.  In other words, it is not clear the court actually considered the Brunzell declaration but then refused to admit it.  Instead, it is possible, based on the murky record before us, the court just did not find the Brunzell declaration within the opposition papers Appellants filed.  In fact, such an explanation might be probable because the subject declaration was not clearly identified and was found in the middle of a notice of lodgment.  In other words, the Brunzell declaration was not submitted to court in the typical format of most declarations.

Under the latter scenario, it could be argued that the court did not exercise any discretion as to the consideration of the Brunzell declaration because it did not believe it existed.  In other words, it never made a decision to consider or not consider the Brunzell declaration, being unable to locate it.  And, generally, a failure to exercise discretion is "itself an abuse of discretion."  (*In re Marriage of Gray* (2007) 155 Cal.App.4th 504, 515.)  But, on the record before us, it borders on unfair for us to saddle the superior court with the determination that it abused its discretion when Appellants never asked the court to address the issue of the "nonexistent" Brunzell declaration despite having sufficient notice of the issue.

Yet, even if we were to assume the court abused its discretion in failing to consider the Brunzell declaration, our analysis here would not change. Appellants must do more than point to what is akin to an evidentiary error in claiming the superior court erred in granting summary judgment.  They need to show us why that evidentiary error matters.  In other words, it is Appellants' burden to cite to specific evidence in the Brunzell declaration and

explain how such evidence creates a triable issue of material fact.[7] (See *Merrill v. Navegar, Inc.*, *supra*, 26 Cal.4th at pp. 476-477; *Aguilar*, *supra*, 25 Cal.4th 826 at p. 856.) They have not done so and therefore have waived this argument here. (See *Malibu Hillbillies*, *supra*, 36 Cal.App.5th at p. 146; *Nelson*, *supra*, 172 Cal.App.4th at p. 862; *Falcone*, *supra*, 164 Cal.App.4th at p. 830.)

Finally, Appellants offer a smattering of allegations they claim warrant reversal. Appellants claim these allegations are supported by in-person meetings, telephone calls, and letters. In addition, they challenge the validity of certain documents and trustee actions predating Rothermel's tenure as successor trustee. These allegations include speculation that Beverly lacked the mental capacity to enter into the purchase and sale agreement for the Taco Bell property. They do not connect these claims to actual evidence in the record or the causes of action and allegations in the second amended complaint. They are no help to Appellants' arguments here.

In short, Appellants have not carried their burden of providing evidence showing that a triable issue of material fact exists. Specifically, they have not offered any evidence calling into question whether the Taco Bell property sold below market or that the Trust was otherwise harmed by the sale. Further, they have offered no evidence creating a triable issue of fact regarding whether Rothermel breached any fiduciary duty to the Trust. To the contrary, the only evidence before us suggests Rothermel acted

---

[7] Rothermel argues the Brunzell declaration is not admissible in any event, including its noncompliance with section 2015.5 and that it contains hearsay. Appellants do not address any of these arguments in the reply brief. Moreover, even if we were to consider the substance of Brunzell's declaration, we struggle to see how the declaration creates a triable issue of fact as to the causes of action against Rothermel framed by the second amended petition.

carefully and prudently in ensuring the sale of the Taco Bell property closed. Additionally, Appellants offer no evidence calling into question the accountings provided by Rothermel. Based on the record before us, the superior court did not err in granting summary judgment.[8]

## DISPOSITION

The judgment is affirmed. Rothermel is awarded his costs on appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


HALLER, J.


DATO, J.

---

[8] Appellants also argue in their briefs that Rothermel's petition for payment of attorney fees and trustee fees is improper because summary judgment should not have been granted. There is no order before us awarding Rothermel attorney fees and trustee fees. As such, we do not address any of Appellants' arguments as to fees that might be owed Rothermel for his role as trustee.